DROCKTON *v.* BD. OF ELECTIONS OF CUYAHOGA COUNTY.

(No. 866617—Decided October 9, 1968.)

Common Pleas Court of Cuyahoga County.

*Messrs. Benesch, Friedlander, Mendelson & Coplan, Mr. Morton D. Barrisch,* and *Mr. Peter R. Harwood,* for plaintiffs.
*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. John L. Dowling,* for defendants.
*Gertrude E. Polcar,* amicus curiae.

Patton, J.   This cause came on for hearing on the petition of plaintiffs and the answer of defendants, all parties having been duly served with process and defendants having appeared through their counsel on September 24, 1968.

The oral motion of defendant Ted W. Brown to dismiss as to him was granted on the day of the hearing.

There is also filed in this case a brief *amicus curiae* on behalf of Donald A. Kurek and Richard J. LoVano, electors of the city of Parma, Ohio.

Plaintiffs seek to restrain the board of elections from certifying, printing and placing on the ballots certain proposed ordinances for the city of Parma.

The facts, as developed at the hearing, are as follows:

Parma, Ohio, is a noncharter city. On Saturday, July 20, 1968, at 9 a. m., two proposed ordinances were delivered to Joseph S. Lime, auditor of the city of Parma, at his residence. The purpose of the delivery was to commence the procedure for proposing said ordinances by means of initiative, pursuant to Section 731.32, Revised Code. The auditor testified that the Parma city hall is not open on either Saturday or Sunday, and that he kept the proposed ordi-

nances at his home until Monday, July 22, 1968. It was on this day the ordinances were taken to the city hall by the auditor. He further testified the only office maintained by the auditor was at the city hall.

The two ordinances delivered to the auditor were titled as follows:

1.) An Ordinance Providing for the Allocation of Funds Collected by the Levy of the Parma Municipal Income Tax. (Hereinafter referred to as the income tax ordinance.)

2.) An Ordinance Amending the Planning and Zoning Code of the City of Parma as to Area Districts, minimum Lot Area per Dwelling Unit for Residentail Types, Minimum Lot Size and Percentage of Open Space. (Hereinafter referred to as the zoning ordinance.)

On Saturday, July 27, 1968, at 3:30 p. m., petitions covering both of aforesaid ordinances were delivered to Mr. Lime. Once again the delivery took place at the residence of the auditor, the city hall being closed. The auditor immediately removed the petitions to the city hall, where he unlocked the city hall doors, placed the petitions in a locked safe, and left. The petitions were not removed from the safe until noon Monday, July 29, 1968, at which time the petitions were taken to the board of elections to check the signatures against the registrations on file at the board. The petitions were not returned to the Parma city hall until after 4.30 p. m. and locked in the safe, the city hall having been closed.

On Tuesday, July 30, 1968, at 9 a. m., the petitions were again removed from the safe and immediately taken to the board of elections for the same purpose as was done on Monday. Again the petitions were not returned to the city hall until after 4:30 p. m. The petitions were not at the auditor's office at the Parma city hall from noon until after 4:30 p. m. Monday and from 9 a. m. until 4:30 p. m. on Tuesday.

On August 7, 1968, the text of each proposed ordinance was certified to the board of elections with a letter from the auditor covering each ordinance. On August 13, 1968,

pursuant to a request of the board of elections, the petitions covering the ordinances were delivered to the board for inspection.

The auditor testified there was no public notice or public hearing regarding the two ordinances at any time.

In support of their request that the defendants be restrained from placing the ordinances on the ballot, plaintiffs make the following contentions:

1. That the failure to give public notice or have a public hearing on the proposed ordinances violated the requirements of Section 713.12, Revised Code, and precludes the possibility of putting the proposed ordinances on the ballot;

2. That a full and correct copy of the text of the zoning ordinance was not made a part of every part petition as required by Section 731.31, Revised Code;

3. That certain part petitions on both ordinances were defective in that the handwritten title of the ordinance was different from the printed title set forth on the opposite side of the part petition;

4. That neither the ordinances nor the petitions were lawfully filed with the auditor, since they were delivered to him on a day and at a time when city hall was closed at a place other than his office;

5. That the auditor did not certify the ordinances to the board of elections after ten days from the date filed, in violation of Section 731.28, Revised Code;

6. That the auditor failed to keep the part petitions open for public inspection for ten days after the date filed, in violation of Section 731.34, Revised Code;

7. That some part petitions on each ordinance were circulated before the ordinances were filed with the auditor, in violation of Section 731.32, Revised Code;

8. That the board of elections has no authority to place the ordinances on the ballot at the next general election, November 5, 1968, for the reason that such date is not ''subsequent to ninety days after the certifying of such initiative petition(s) to the board of elections,'' as is required by Section 731.28, Revised Code.

9. That the board of elections wrongfully refused to check the validity of the filing of the ordinances and petitions with the auditor, in violation of Sections 3519.15, 3501.38 and 3501.11 (J) and (K), Revised Code.

The court first discusses the necessity for public notice and hearing. Section 713.12, Revised Code, states in part as follows:

"Before any ordinance * * * may be passed the legislative authority of the municipal corporation shall hold a public hearing thereon."

The substance of this statute is to require a public hearing with 30 days notice on ordinances pursuant to Sections 713.07 and 713.11, Revised Code, which sections relate to certification of zoning plans from a planning commission to the legislative authority and the creation of a board of zoning appeals.

Section 713.12, Revised Code, is not relevant to the issues raised in the instant proceeding. The intent of this section is to have a full public airing of opinion when an ordinance is to come before a city council. An initiative does not require such public hearing since the concept of an initiative places the power in the people by means of ballot, and the "public hearing" is achieved during the campaign period.

Plaintiffs next allege a violation of Section 731.31, Revised Code. The text of the zoning ordinance contains a list of zoning areas with lot areas and sizes for such classification. The first column in the list is headed:

"Area Designation on Zone Map"

Beneath this heading are the classifications "AA," "A," "B," and "C & D." There is no further reference to any zone map either in the text of the ordinance or by attached maps. Plaintiffs contend that the failure to attach maps or make other reference to the "zone map" violates Section 731.31, Revised Code, which states in part:

"Any initiative or referendum may be presented in separate parts, but each part of any initiative petition shall contain a full and correct copy of the title and text of the proposed ordinance * * *"

A careful examination of the evidence before the court

shows that the petitions did not vary in any respect from the title or text of the proposed ordinances, and that, therefore, each part petition did "contain a full and correct copy of the title and text of the proposed ordinance." In this regard, plaintiffs' recourse is not, as attempted, an attack of the initiative, but is rather an attack of the ordinance itself, *after it is enacted into law.* The reason for this is set forth clearly in the case of *Cincinnati* v. *Hillenbrand* (1921), 103 Ohio St. 286, in syllabus No. 2 and No. 4:

"2. This court has no authority to pronounce a judgment or decree upon the question whether a proposed law or ordinance will be valid and constitutional if enacted by a legislative body or adopted by the electors. And where the mandatory provisions of the constitution or statute prescribing the necessary preliminary steps to authorize the submission to the electors of an initiative statute or ordinance have been complied with the submission will not be enjoined. (*Pfeifer* v. *Graves, Secretary of State,* 88 Ohio St. 473, approved and followed.)"

"4. Section 4227-4, General Code (731.31, Revised Code), provides that any initiative or referendum petition may be presented in separate parts but each part of any initiative petition shall contain a full and correct copy of the title and text of the proposed ordinance or other measure. An initiative petition which includes a correct copy of the title and text of a proposed ordinance is sufficient to authorize submission thereof to the people if the requirements of the statute in other respects are complied with."

In the opinion it is further stated at page 300:

"Under the well-settled rule stated in *Pfeifer* v. *Graves, supra,* if such an ordinance were introduced and pending in the city council 'the court would not pronounce a judgment or decree' on the question whether it would be constitutional if passed, and the same rule applies under the same authority when the legislation is pending before the electors. Of course if the electors adopt legislation which violates the constitution it will be invalid and all parties injuriously affected thereby will be protected by the courts."

This court, however, feels that there is an important

difference between a court's consideration of an ordinance pending before a city council and one pending on initiative. The legislative authority has the power to alter or amend a proposed ordinance before its passage, and, by such action, might cure any defect. It would be presumptuous of a court to rule on the validity of such a proposed ordinance before it has reached its final form and is passed.

An initiative petition is, however, different. With an initiative there can be no alteration or amendment. It is either voted into law or not at a general election. If it is, in fact, unconstitutionally void for vagueness or uncertainty, the voters have been put to unnecessary expense by allowing it to go on the ballot.

Perhaps a reviewing court in its wisdom will find that a trial court in the first instance should consider the validity of a proposed ordinance as it was submitted to the electors for their signatures on the petition, rather than confine the trial court to considering solely whether the proponents of a proposed ordinance complied with the statutory procedure.

However, this court is compelled to follow the ruling in *Cincinnati* v. *Hillenbrand, supra,* and thus will not determine the validity of a proposed ordinance before it becomes law, and for this reason this ground of plaintiffs must fail.

The next ground set forth by plaintiffs relates to the allegedly defective petitions. Certain part petitions placed in evidence before the court contain the printed title and text on the front side, and, on the reverse side, is handwritten the title of the other (or incorrect) ordinance. Plaintiffs contend that this is misleading to those being solicited to sign and violates that part of Section 731.31, Revised Code, recited earlier.

If the handwritten title was on the petitions when the signatures were solicited, it is the court's opinion that the part petitions involved would be defective and the signatures thereon could not be counted. There is, however, no evidence of when the writing was placed on the petitions. Without evidence of the time when the title was "written,"

the court is unable to sustain plaintiffs' position regarding this defect and will not presume the writing to have been added prior to the circulation.

The remaining allegations of plaintiffs all relate to an analysis of various time elements involved in the preliminary procedures in instituting an initiative, as well as the necessary preliminary procedures themselves. Because of the overlapping of areas involved, these allegations will be discussed together.

Plaintiffs claim that the filing of the ordinances and petitions with the auditor at his home was unlawful. Defendants, and particularly the amicus curiae, argue, in effect, that the papers involved *can* be filed as in this case, and that "custom (of closing city hall on Saturday) cannot defeat the rights of the electors of the city of Parma to file either the proposed ordinances or the petitions." It is precisely the rights of the electors which is the concern of this court. Not just the rights of those electors opposing these initiatives, nor of those supporting them, but rather of all the electors.

The brief of the *amicus curiae* asserts that ministerial acts which are lawful on other days are also lawful on Saturday, except where otherwise prohibited. The court holds that the delivery of the documents to the auditor at his home on Saturday was a lawful delivery; however, it is only the delivery that was lawful. The ordinances and petitions were not *filed* until the first day following when the auditor's office was open. That day was the following Monday. Ballentine's Law Dictionary gives the following definition:

"File (Fil)

"And under modern statutes a paper whose filing carries notice, or effects private rights, is filed when it is deposited with the proper officer *at his office and not elsewhere.*" (Emphasis added.)

If the Ohio Legislature had intended to provide that initiative petitions be given to the city auditor it would have used the word "given" or "submitted" or "presented." It did not. It used the word "filed," and it must be

presumed to have meant what it said. Filing is not merely presenting. Filing is the permanent preservation as a public record.

The court, therefore, holds that the petitions were not lawfully filed until Monday, July 29, 1968. Any signatures obtained prior to that date are therefore invalid. An examination of the exhibits shows 40 invalid signatures on the zoning ordinance petitions and 43 invalid signatures on the income tax ordinance petitions; however, neither of these figures is sufficient to invalidate the petitions for insufficient signatures.

The statutes setting forth the time periods relevant to the instant action are set forth below as they are applicable to this case:

Section 731.28, Revised Code.
"* * *

"When a petition is filed with the city auditor or village clerk, signed by the required number of electors, proposing an ordinance or other measure, such auditor or clerk shall, after ten days, certify the text of the proposed ordinance or other measure to the board of elections. The auditor or clerk shall retain the petition.

"The board shall submit such proposed ordinance or measure for the approval or rejection of the electors of the municipal corporation at the next succeeding general election, occurring subsequent to ninety days after the certifying of such initiative petition to the board of elections."

Section 731.34, Revised Code.
"* * *

"After a petition has been filed with the city auditor or village clerk it shall be kept open for public inspection for ten days."

As to the allegation that the auditor did not properly certify the ordinances to the board of elections the court holds that plaintiffs' Exhibit 1S and 1-A, the purported certification to the board of elections, are sufficient to constitute certification of the text to the board. Plaintiffs' argument that the auditor is required to certify the petitions is without merit. The clear language of the statute (Sec-

tion 731.28, Revised Code), requires only certification of the text, and the auditor is required to "retain the petition." The language in the third paragraph of Section 731.28, Revised Code, referring to "ninety days after the certifying of *such initiative petition*" cannot serve to dilute the clearly stated procedure in the second paragraph. The certification of the text is therefore sufficient, notwithstanding the fact that the petitions were not delivered until some six days later.

The court next proceeds to the time elements involved in the instant case relative to:

1. Whether the auditor certified the text of the proposed ordinances *after* ten days from the date of filing of the petitions with the auditor;

2. Whether the auditor *failed* to keep the petitions *open for public inspection* for ten days;

3. Whether November 5, 1968, the date of the next succeeding general election, is subsequent to ninety days after August 7, 1968, the date of certificaton to the board of elections.

When we read Section 731.28, Revised Code, we must ask what was the intent of the Legislature when it says, "* * * When a petition is filed with the city auditor or village clerk * * * such auditor or clerk *shall, after ten days,* certify the text of the proposed ordinance or measure to the board of elections. The auditor or clerk shall retain the petition."

First, Sections 731.28 through 731.40, Revised Code, spell out the procedure and prohibitions relative to initiative and referendum.

Analyzing Section 731.28, Revised Code, the auditor cannot certify the text of a proposed ordinance until a petition is officially filed with the city auditor. This section makes it mandatory upon the city auditor to withhold certifying the text of the proposed ordinance until *after* ten days have expired from the date of filing the petition.

We then must look to the intent of the Legislature for such mandatory requirement.

Why does the Legislature impose this mandatory re-

quirement of not permitting the city auditor to certify the text of the proposed ordinance until *after the expiration of ten days from the date of filing the petition?*

It is obvious that we must look to Section 731.34, Revised Code, for the answer and that section must be read *in pari materia* with Section 731.28, Revised Code. Section 731.34, Revised Code, clearly spells out the reason for withholding the certification of the text of the proposed ordinance until *after ten days* of the filing of a petition. It says,

"* * * after a petition has been *filed* with the city auditor or village clerk it (petition) *shall be kept open for public inspection for ten days.*"

Thus the Legislature made it very clear that the text of a proposed ordinance cannot be certified to the board of elections until the electors first have had an opportunity to inspect the petition in support of such proposed ordinance.

The public therefore had an absolute right to have those petitions available for its inspection for a *full* ten-day period. Any period less than ten days is an abuse and deprivation of that right, and is fatal to the lawful certification of the ordinance. The electors of Parma and other interested persons have a protected legal right to have these ordinances and the petition in support thereof open and available for inspection for a full ten-day period before certifying the text of the proposed ordinances to the board of elections.

Earlier in this decision the court discussed the difference between the date of delivery and the date of filing and held that the petitions were not lawfully *filed* until July 29, 1968. The tenth day from that date is August 7, 1968, the day when the ordinances were certified to the board of elections. Clearly, the first day upon which the ordinances could have been certified was August 8, 1968, or the eleventh day after the date of filing.

The argument that the city of Parma permits the obtaining of burial permits from certain employees of the auditor on Saturday or Sunday does not naturally extend the right to transact other business on those days. The

obtaining of a burial permit is a prerequisite to the interment of a body under Section 3705.24, Revised Code. Health standards necessitate the availability of such permits at all times since death is often an unexpected occurence. The filing of papers affecting the rights of citizens is not unexpected, and the filing of such papers can only be executed on days when the proper office is open for business to the public.

The first day the auditor's office was so open, after the delivery of the petitions to him on Saturday afternoon, was Monday, July 29, 1968.

The provision of Section 731.34, Revised Code, requiring ten days of public inspection has likewise been violated by the procedure in this case. The *amicus curiae* argue that since the petitions were not delivered to the board of elections until August 13, 1968, they were available for public inspection until that date. The court is unable to agree with this argument. Sections 731.28 and 731.34, Revised Code, are both statutes dealing with the same subject, namely, initiative or referendum petitions. The ten-day public inspection requirement of Section 731.34, Revised Code, and the ten days which the auditor must hold the petitions before certifying under Section 731.28, Revised Code, are *in pari materia* and should be read together. The second syllabus of the case of *State, ex rel. Pratt,* v. *Weygandt* (1956), 164 Ohio St. 463, states the following:

"Statutes relating to the same matter or subject, although passed at different times and making no reference to each other, are *in pari materia* and should be read together to ascertain and effectuate if possible the legislative intent."

The selection of a ten-day period in the two statutes in question was not an unrelated act. Each refers to and is dependent upon the other. The auditor may not certify the ordinance until the petitions have been open for public inspection for ten days, and the petitions can not be open for public inspection for ten days until they have been filed for ten days.

The term "open for public inspection" should require

no interpretation. While there is disagreement as to whether the middle weekend should count in the number of days computed for public inspection, the court finds it unnecessary to reach this issue. Since the petitions were not lawfully filed until Monday, July 29, 1968, that is the date from which the ten days of public inspection must be computed. On one-half of July 29, 1968, and on all of July 30, 1968, the petitions were not at the city hall but were at the board of elections. Under such circumstances the petitions cannot be considered to have been available for public inspection. Except for one-half day on Monday, July 29, 1968, the petitions did not become available for public inspection until Wednesday, July 31, 1968. At the time the ordinances were certified, they had only been available for public inspection seven and one-half days plus part of an additional day (to approximately 3 p. m. of August 7, 1968). This time period includes Saturday and Sunday, August 3 and 4, 1968. The fact that the petitions remained with the auditor until August 13, 1968, is of no consequence. They must have been available for public inspection for ten days before certification of the proposed ordinances, and, as discussed, they were not so available.

The final issue is whether the board of elections would have the right to place the issues on the ballot on November 5, 1968, if the ten-day time periods had been validly observed. Patently, they do not. The *amicus curiae* argue that the cases of *State, ex rel. Jones,* v. *Board of Deputy State Supervisors* (1915), 93 Ohio St. 14, and *Thrailkill* v. *Smith* (1922), 106 Ohio St. 1, establish the fact that in computing the 90-day time period, the first day is included and the last day is excluded. By this reasoning, November 5, 1968, would be the 91st day after August 7, 1968, and, therefore, the board could place the ordinances on the ballot.

The *amicus curiae* attempt to distinguish the case of *Heuck* v. *State* (1933), 127 Ohio St. 247, which held in effect that the day of filing does not count, and the first day to be counted is the day following the day of filing. The court cannot agree that the *Heuck case* is not controlling. With respect to the computation of the 90-day period itself re-

quired by Section 731.28, Revised Code, Judge Zimmerman, speaking of the *Jones* and *Thrailkill* cases, stated as follows:

"What was said in the *Thrailkill case* at page 6 of 106 Ohio St. (wherein it was stated that the 90-day period is computed by including the first day and excluding the last day of such period), is mere obiter based entirely upon obiter from the *Jones case,* and *we do not consider it controlling.*"

This court therefore holds that November 5, 1968, is the ninetieth day following August 7, 1968, and that such day is not *subsequent* to ninety days from August 7, 1968. The board of elections is therefore without authority to place either of the ordinances on the ballot at the general election to be held November 5, 1968.

Since the issues involved have been properly presented to the court, there is no need to discuss the duties of the board of elections in accepting or validating such ordinances as are involved here. Plaintiffs have sought the jurisdiction of this court to raise questions as to the legality of certain procedures, and the court has ruled. It is unnecessary to further discuss the actions of the board.

It is therefore the finding of this court that the prayer of plaintiffs will be granted. Defendants are hereby enjoined from certifying, printing and placing the zoning ordinance and the income tax ordinance on the ballot for the general election of November 5, 1968. Defendants are further enjoined from distributing for use at said general election any ballots bearing the proposed ordinances. Costs to be taxed to defendants.