THE STATE EX REL. THURN v. CUYAHOGA COUNTY BOARD OF ELECTIONS.

[Cite as *State ex rel. Thurn v. Cuyahoga Cty.*
*Bd. of Elections* (1995), 72 Ohio St.3d 289.]

(No. 95–638—Submitted April 27, 1995—Decided May 1, 1995.)

290

*Grendell & Marrer Co., L.P.A., Timothy J. Grendell* and *David H. Gunning II*, for relator.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, *Patrick J. Murphy* and *Michael P. Butler,* Assistant Prosecuting Attorneys, for respondent.

*Per Curiam.* Thurn initially requested a writ of mandamus to prevent the board from placing the three proposed ordinances on the May 1995 ballot. In general, where a complaint filed in this court or a court of appeals is purportedly in mandamus but the allegations manifestly indicate that the real object is injunction, the complaint does not state a cause of action for mandamus and must be dismissed for want of jurisdiction. *State ex rel. Governor v. Taft* (1994), 71 Ohio St.3d 1, 3, 640 N.E.2d 1136, 1137–1138; *State ex rel. Walker v. Bowling Green* (1994), 69 Ohio St.3d 391, 392, 632 N.E.2d 904, 905. Since the essence of

Thurn's request for mandamus relief is injunctive, *i.e.*, to enjoin the board from placing the proposed ordinances on the May 1995 ballot, the foregoing general rule would normally preclude her entitlement to a writ of mandamus.

Nevertheless, we have recognized the propriety of using a writ of mandamus to enjoin a board of elections from performing the ministerial act of placing an issue on an election ballot. *State ex rel. Burech v. Belmont Cty. Bd. of Elections* (1985), 19 Ohio St.3d 154, 19 OBR 437, 484 N.E.2d 153; *State ex rel. Bogart v. Cuyahoga Cty. Bd. of Elections* (1993), 67 Ohio St.3d 554, 621 N.E.2d 389. Similarly, in varying circumstances, we have held that the act of placing issues on the ballot is ministerial rather than quasi-judicial, so that prohibition will not lie to prevent their placement. See, *e.g.*, *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections* (1995), 72 Ohio St.3d 69, 647 N.E.2d 769; *State ex rel. Brookpark Entertainment, Inc. v. Cuyahoga Cty. Bd. of Elections* (1991), 60 Ohio St.3d 44, 46, 573 N.E.2d 596, 599.

Yet R.C. 3501.39 provides for a written protest to be filed against any petition for the purpose of becoming a candidate for any nomination or office or for the holding of an election on any issue and requires a hearing and determination on the protest. Thurn filed a written protest, and a hearing which included sworn testimony was held by the board. Since R.C. 3501.39 required a hearing which in some respects resembled a judicial trial, the board exercised quasi-judicial authority in denying Thurn's protest and deciding to place the proposed ordinances on the ballot. *State ex rel. Youngstown, supra.* Accordingly, mandamus does not lie. We thus *sua sponte* converted the claim to one in prohibition. See *Burech, supra.* Therefore, we must determine if prohibition, although unpled, is appropriate.

In order to obtain a writ of prohibition, Thurn must establish that (1) the board is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 234–235, 638 N.E.2d 541, 543.

As to the first element, the board contends that it has already exercised its quasi-judicial power by denying Thurn's protest and that the absentee balloting process has already begun. However, this court has recognized that a writ of prohibition may issue to prevent the placement of names or issues on a ballot even though the protest hearing has been completed, as long as the election has not yet been held. *State ex rel. Youngstown, supra; State ex rel. Shumate v. Portage Cty. Bd. of Elections* (1992), 64 Ohio St.3d 12, 591 N.E.2d 1194; cf. *State ex rel. Adams v. Gusweiler* (1972), 30 Ohio St.2d 326, 330, 59 O.O.2d 387, 389, 285 N.E.2d 22, 24. The board exercised quasi-judicial authority in denying Thurn's protest and deciding to place the proposed ordinances on the ballot. Concerning

the third prerequisite for a writ of prohibition, given the proximity of the election, an injunction would arguably not constitute an adequate remedy because any "appellate process would last well past the election." *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 6, 18 O.O.3d 128, 129, 412 N.E.2d 393, 394; see, also, *State ex rel. Brown v. Summit Cty. Bd. of Elections* (1989), 46 Ohio St.3d 166, 167–168, 545 N.E.2d 1256, 1258.

Therefore, the dispositive issue in this case is whether the board's exercise of quasi-judicial power in denying the protest and placing the proposed ordinances on the May 1995 ballot is unauthorized. A board's exercise of judicial or quasi-judicial power is unauthorized if it engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or applicable legal provisions. *State ex rel. Youngstown, supra,* 72 Ohio St.3d at 72, 647 N.E.2d at 772; see, also, *State ex rel. Kelly v. Cuyahoga Cty. Bd. of Elections* (1994), 70 Ohio St.3d 413, 414, 639 N.E.2d 78, 79. Thurn contends that the board acted in clear disregard of R.C. Chapter 731 and the North Royalton Charter in denying her protest.

Both R.C. 731.31 and Article XV(d) of the North Royalton Charter provide that any initiative petition may be presented in separate parts, but each part shall contain a full and correct copy of the title and text of the proposed ordinance. See, also, R.C. 305.32. Extraordinary relief will lie to prevent an election on a proposed ordinance where the initiative petition does not contain a full and correct copy of the title and text of the proposed ordinance. *State ex rel. Esch v. Lake Cty. Bd. of Elections* (1991), 61 Ohio St.3d 595, 575 N.E.2d 835; see, also, *Burech, supra.* Omitting the title and/or text of a proposed ordinance interferes with the petition's ability to fairly and substantially present the issue and might mislead electors. *Esch* and *Burech, supra.*

Thurn relies on *Esch* and *Burech* to claim that proposed Ordinance No. 95–22 is incomplete, since it did not contain the referenced figures. In *Esch* and *Burech,* it was uncontroverted that the title and/or text of the proposed ordinance was not attached to the petitions. Conversely, in the case at bar, there is evidence that the referenced figures were not part of the text of proposed Ordinance No. 95–22 and that they were deliberately not attached to the proposed text. Other courts have held that the "full and correct copy of the title and text" requirement is satisfied despite references to unattached zoning maps or judgment entries. See *Drockton v. Cuyahoga Cty. Bd. of Elections* (1968), 16 Ohio Misc. 211, 216–217, 45 O.O.2d 171, 174–175, 240 N.E.2d 896, 900–901; *State ex rel. Turpin Woods Co. v. Hamilton Cty. Bd. of Commrs.* (1989), 58 Ohio App.3d 61, 65–66, 568 N.E.2d 722, 726. While we do not condone referencing figures which are not attached to the text of a proposed ordinance, there is sufficient evidence in the record which supports the board's conclusion that the referenced figures were not part of the text of the proposed ordinance and that

the ordinance was complete without the figures. The board was justified in rejecting Thurn's protest in this regard.

Thurn additionally claims that if proposed Ordinance No. 95–22 is not placed on the ballot because of an invalid initiative petition, the other proposed ordinances similarly should not be placed on the ballot because they would be invalid without the new zoning classification that would be created by Ordinance No. 95–22. However, based on our holding that the initiative petition for proposed Ordinance No. 95–22 satisfied the R.C. 731.31 requirement that each part-petition contain a full and correct copy of the title and text of the proposed ordinance, relator's claim in this regard is moot. Further, relator's contention is meritless, since any claim alleging the unconstitutionality or illegality of the substance of the proposed ordinances prior to their approval by the electorate is premature. *State ex rel. Williams v. Iannucci* (1988), 39 Ohio St.3d 292, 294, 530 N.E.2d 869, 870; *Cincinnati v. Hillenbrand* (1921), 103 Ohio St. 286, 133 N.E. 556, paragraph two of the syllabus ("[W]here the mandatory provisions of the Constitution or statute prescribing the necessary preliminary steps to authorize the submission to the electors of an initiative statute or ordinance have been complied with, the submission will not be enjoined.").

Thurn's final contention is that the board acted in clear disregard of R.C. 731.28 and 731.34 in denying Thurn's protest that the clerk of council certified the text of the proposed ordinances prior to ten days after the supplemental initiative part-petitions were filed.

R.C. 731.28 provides that "[w]hen a petition is filed with the city auditor or village clerk, signed by the required number of electors proposing an ordinance or other measure, such auditor or clerk shall, after ten days, certify the text of the proposed ordinance or measure to the board of elections." R.C. 731.34 provides that "[a]fter a petition has been filed with the city auditor or village clerk it shall be kept open for public inspection for ten days." Article XV(a) of the North Royalton Charter provides that if the city council "fails or refuses to pass such proposed ordinance * * *, the petitioners may require that it be submitted to a vote of the electors * * * in its original form * * * by filing with the Clerk, within ten (10) days after final action on such ordinance or resolution of Council, a supplemental petition signed by that number of additional registered electors, which when together with those who signed the original petition, will total at least that number which equals twenty percent (20%) of the electors voting at the last preceding November election * * *." Following council's rejection of Ordinance Nos. 95–23 and 95–24 and its failure to act upon Ordinance No. 95–22, RIC submitted supplemental petitions containing additional signatures to the clerk on March 2, 1995. The clerk certified the initiative petitions on the proposed ordinances to the board seven days later, on March 9, 1995.

It is a fundamental rule of statutory construction that statutes relating to the same subject matter should be construed together. *State v. Leichty* (1993), 68 Ohio St.3d 37, 39, 623 N.E.2d 48, 50. In construing such statutes *in pari materia*, they should be harmonized so as to give full application to the statutes. *United Tel. Co. of Ohio v. Limbach* (1994), 71 Ohio St.3d 369, 372, 643 N.E.2d 1129, 1131. R.C. 731.28 and 731.34 relate to the same subject matter and are thus construed *in pari materia*, resulting in the requirement that certification may not lawfully occur earlier than the eleventh day after the petition is filed. *Drockton, supra.* The purpose of the ten-day period of R.C. 731.28 and 731.34 is the same: to give electors and other interested persons an opportunity to inspect the petition to determine whether the names on the petition are electors of the municipality, or whether the petition complies with law, and for the further purpose of giving the electors who have signed the petition an opportunity to withdraw their names if they so desire. See *Ohio Power Co. v. Davidson* (1934), 49 Ohio App. 184, 192–193, 2 O.O. 448, 452, 195 N.E. 871, 874–875, analyzing G.C. 4227–1, the statutory predecessor to R.C. 731.28; see, also, *State ex rel. Kahle v. Rupert* (1918), 99 Ohio St. 17, 18, 122 N.E. 39.

The board asserts that R.C. 731.28 and 731.34 were not violated when the petitions were certified only seven days after supplemental part-petitions containing additional signatures were submitted to the clerk. The board relies on *Storegard v. Cuyahoga Cty. Bd. of Elections* (1969), 22 Ohio Misc. 5, 50 O.O.2d 228, 255 N.E.2d 880, where the common pleas court held that the requirement of R.C. 731.34 that an initiative petition be kept open for public inspection for ten days does not indicate that this period of inspection must be completed before the certification of the petition to the board of elections pursuant to R.C. 731.28. However, *Storegard* misinterpreted R.C. 731.28 and 731.34 and failed to construe them *in pari materia.* See *Drockton, Ohio Power Co.* and *State ex rel. Kahle, supra.*

The board further notes the affidavit of its director, Thomas Hayes, in which he indicates that the initiative petitions had been in the clerk's possession for greater than ten days. The board asserts that although the petitions were certified prior to the ten-day public inspection period, they had been open to public inspection for in excess of ten days. The board thus seems to contend that it has substantially complied with R.C. 731.28 and 731.34.

However, the settled rule is that election laws are mandatory and require strict compliance. *Esch, supra*, 61 Ohio St.3d at 597, 575 N.E.2d at 836. Substantial compliance is acceptable only when an election statute expressly permits it. *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections* (1992), 65 Ohio St.3d 167, 169, 602 N.E.2d 615, 617; cf. *State ex rel. Fite v. Saddler* (1991), 62 Ohio St.3d 170, 173, 580 N.E.2d 1065, 1067, quoting *Stern v.*

*Cuyahoga Cty. Bd. of Elections* (1968), 14 Ohio St.2d 175, 180, 43 O.O.2d 286, 289, 237 N.E.2d 313, 317 (" 'Absolute compliance with every technicality should not be required * * * unless such complete and absolute conformance to each technical requirement * * * serves a public interest and a public purpose.' "). Neither R.C. 731.28 nor 731.34 expressly permits substantial compliance. Although the initial initiative petitions were not certified until after the ten-day period expired, the supplemental part-petitions required by Article XV(a) of the North Royalton Charter were certified prior to the expiration of the ten-day period. Since the supplemental part-petitions were part of the initiative petitions, the petitions were not filed with the clerk for purposes of R.C. 731.28 and 731.34 until March 2, 1995. Electors and other interested persons were entitled to inspect all parts of the initiative petitions, including the supplemental part-petitions, for the required ten-day period prior to certification of the text of the proposed ordinances set forth in the petitions to the board.

In addition, this court in *Kahle* reached a conclusion that comports with the holdings of *Drockton* and *Ohio Power Co.*, which preclude certification until following the ten-day period. After certification, electors signing petitions lack the right to withdraw their signatures because the certification constitutes "official action." *Kahle, supra;* see, also, *State ex rel. Crank v. Lawrence Cty. Bd. of Commrs.* (Feb. 7, 1994), Lawrence App. No. 92CA21, unreported, 1994 WL 43726. Therefore, even under a substantial-compliance interpretation of R.C. 731.28 and 731.34, the statutes were violated because the early certification prevented electors from withdrawing their signatures following certification but prior to the expiration of the ten-day period. Since this time period was not followed, the board abused its discretion and acted in clear disregard of R.C. 731.28 and 731.34 in rejecting Thurn's protest in this regard and placing the proposed ordinances on the May 1995 ballot.

Accordingly, a writ of prohibition is issued to prevent the placement of proposed Ordinance Nos. 95–22, 95–23, and 95–24 on the May 2, 1995 general election ballot. The board has also filed a motion for clarification requesting the court to give directions as to what to do with the absentee ballots regarding this issue should a writ of prohibition be issued. Since the election on these issues should not be conducted, the absentee ballots on the issue should not be counted.

*Writ granted.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.