DECISION AND JUDGMENT ENTRY
{¶ 1} This is an accelerated appeal from a judgment of the Wood County Court of Common Pleas, in which the trial court denied a request for injunctive relief sought by appellants, Nancy Rankin, Paul Rankin, and Amy Ebersole, in a matter involving the rezoning of appellants' farm acreage.
 {¶ 2} Appellants set forth the following as their sole assignment of error on appeal:
 {¶ 3} "I. The trial court erred by failing to apply a strict compliance standard in reviewing the facial deficiencies of the referendum petition, and abused its discretion in denying plaintiffs-appellants request for a permanent injunction."
 {¶ 4} The relevant facts, as stipulated by the parties, are as follows. Appellant Nancy Rankin is part-owner[1] of a 40-acre parcel of farmland east of Bowling Green, Ohio. On February 17, 2005, Rankin filed a request for the rezoning of approximately 26 acres of the parcel from A-1 Agricultural to R-4 Multiple Family Residential use. In addition, Rankin asked that the remaining 14 acres be rezoned from A-1 Agricultural to B-2 General Commercial use. City ordinances approving the zoning requests for the 26-acre parcel and the 14-acre parcel, Ordinances 7388 and 7389, respectively, were approved by the Bowling Green City Council on May 16, 2005, and signed by Bowling Green Mayor John Quinn on May 17, 2005.
 {¶ 5} On June 6, 2005, proposed referendum petitions challenging Ordinance 7388 were filed by David McClough, acting on behalf of Bowling Green Citizens for Smart Growth, Inc. ("BGCSG"), with appellee Underwood, who is the Bowling Green City Finance Director. Attached to the proposed petitions were copies of both ordinances,[2] provided by Jacqueline Dubler, an employee in the office of Kay D. Scherreik, Clerk of Bowling Green City Council. Each copy contained a "CERTIFICATION," which stated:
 {¶ 6} "This is to certify that the foregoing is a true copy of Ord. No. 7388 [and 7389] passed by the Council of the City of Bowling Green, Ohio. May 16, 2005[,] Jacqueline Kay Dubler, Clerk of City Council Acting on behalf of [.]"
 {¶ 7} On June 15, 2005, signed copies of the petitions were filed in Underwood's office by BGCSG representative, Mike Tyson. A receipt for the petitions was executed by Diane Hillier, an accounts clerk working for Underwood in the city finance department. Two days later, on June 17, 2005, Underwood transmitted the petitions to the Wood County Board of Elections.
 {¶ 8} On June 22, 2005, appellant, Amy Ebersole, a Bowling Green resident who initially signed the referendum petition, asked Underwood for permission to withdraw her name from the document. Ebersole was directed to make her request at the Wood County Board of Elections. However, when Ebersole went to the Board of Elections, she was told it was too late to remove her name from the petition. On June 29, 2005, Ebersole renewed her request at Underwood's office, where she was again told it was too late to remove her name from the petition.
 {¶ 9} On July 1, 2005, appellants filed a complaint in the Wood County Court of Common Pleas against Underwood and Deborah Hazard, Director of the Wood County Board of Elections. In the complaint, appellants alleged the referendum petitions were invalid, and asked the trial court to prohibit Underwood from transmitting the petitions to the Wood County Board of Elections and declare them "not properly subject to placement on the ballot at any time."
 {¶ 10} The trial court granted appellants' request for a temporary restraining order. On July 5, 2005, appellee Underwood filed an answer and, on July 11, 2005, appellants amended the complaint, dismissing Deborah Hazard from the lawsuit. Thereafter, the remaining parties filed trial briefs, along with the above-referenced stipulations of facts and exhibits. In addition, appellants entered into evidence the affidavit of real estate developer, Hal Marston, who stated that his company, BGO 1, Ltd., is prepared to develop the 26-acre parcel for multi-family housing, and the filing of BGCSG's referendum petition after Ordinance 7388 was approved undermines "the integrity of the public zoning process."
 {¶ 11} On July 20, 2005, the trial court filed a judgment entry, in which it found the copies of Ordinances 7388 and 7389 supplied by Dubler met the requirement of "certification" pursuant to R.C. 731.32, and the signed referendum petitions were properly received by Hillier. The trial court also found the forwarding of the signed petitions to the Wood County Board of Elections, and the denial of Ebersole's request to remove her name from the petitions violated R.C. 731.28 and 731.34, respectively. However, the trial court concluded such violations were curable, and ordered:
 {¶ 12} "* * * that the delivery of the petitions to the Wood County Board of Elections is voided and rescinded.
 {¶ 13} "* * * that the finance director of the City of Bowing Green, Ohio, shall keep the petitions open for public inspection for ten days.
 {¶ 14} "* * * that no official action shall be taken with respect to the petition for the ten day period.
 {¶ 15} "* * * that the finance director of the City of Bowing Green, Ohio, during said ten day period shall permit any signing petitioner to withdraw his or her signature from the petition.
 {¶ 16} "* * * that following the expiration of the foregoing ten day period, the finance director of the City of Bowling Green, Ohio, shall transmit a certified copy of the text of the proposed ordinance or measure to the board of elections.
 {¶ 17} "* * * that the temporary restraining order entered into on July 1, 2005 * * * is hereby dissolved and terminated. * * *"
 {¶ 18} On July 25, 2005, a timely notice of appeal was filed. On July 27, 2005, at the request of both parties, this court issued a stay of execution of the trial court's judgment during the pendency of this appeal.
 {¶ 19} On appeal, appellants assert that the trial court erred when it refused to grant their request for a permanent injunction. In support, appellants argue that, in Ohio, strict compliance with election laws is mandatory. Therefore, appellants claim, the petitions are invalid because: 1) Dubler was not authorized to "certify" copies of Ordinances 7388 and 7389; 2) the signed petitions were not personally accepted by Underwood; and 3) Underwood failed to wait ten days before transmitting the petitions to the Board of Elections. Appellants also argue the denial of Ebersole's request to remove her name from the petitions after they were received by Underwood precludes placement of the referendum on the ballot.
 {¶ 20} We note at the outset that injunction is an extraordinary equitable remedy that "is not available as a right but may be granted by a court if it is necessary to prevent a future wrong * * *." Garono v. Ohio (1988), 37 Ohio St.3d 171,173. It is well-settled that the decision to grant or deny a request for an injunction is within the sound discretion of the trial court, and will not be overturned on appeal absent a finding of abuse of discretion. Garono, supra, citing Perkinsv. Quaker City (1956), 165 Ohio St. 120, 125. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 21} The first issue raised by appellants is whether Dubler, a city employee, was authorized to "certify" copies of Ordinances 7388 and 7399. Appellants argue that strict compliance with R.C. 731.32 requires copies of Ordinances 7388 and 7389 to be "certified" by Kay D. Scherreik, Bowling Green Clerk of Courts. We disagree, for the following reasons.
 {¶ 22} The Ohio Supreme Court has held that strict compliance with election laws is mandatory. State ex rel. Golem v. CuyahogaCty. Bd. of Elections (Sept. 18, 2000), 8th Dist. No. 78145, citing State ex rel. Crossman Communities of Ohio, Inc. v.Greene Cty. Bd. of Elections (1999), 87 Ohio St.3d 132, 137;State ex rel. Mika v. Lemon (1959), 170 Ohio St. 1. However, Ohio courts generally recognize that laws allowing for a municipal referendum should be liberally construed so as to the permit the exercise of such power. State ex rel. Golem, supra, citing State ex rel. King v. Portsmouth (1986),27 Ohio St.3d 1, 4 (Other citations omitted.). Where allowed by the election provision in question, substantial compliance is acceptable.State ex rel. Barletta v. Fersch (2003), 99 Ohio St.3d 295,297.
 {¶ 23} R.C. 731.32 states, in relevant part:
 {¶ 24} "Whoever * * * files a referendum petition against any ordinance * * * shall, before circulating such petition, file a certified copy of the proposed ordinance * * * with the city auditor or the village clerk.
 {¶ 25} "As used in this section, `certified copy' means a copy containing a written statement attesting that it is a true and exact reproduction of the original proposed ordinance * * * or of the original ordinance * * *."
 {¶ 26} On appeal, appellants cite Civ.R. 44 and Evid.R. 901(B), which require copies of public records to be authenticated by the officer having legal custody of the record, or his official deputy, in support of their claim that the copies of Ordinances 7388 and 7389 were not properly certified pursuant to R.C. 731.32. This argument is not well-taken.
 {¶ 27} As observed by the trial court, Civ.R. 44 and Evid.R. 901(B) set out requirements for establishing the authenticity of public records to be used in litigation. See Civ.R. 1(A); Evid.R. 1(A). However, they are not specifically referenced in Ohio's election law statutes. Accordingly, while Civ.R. 44 and Evid.R. 901 provide a method for the authentication of public records under certain circumstances, we must look further to determine whether they are the required method pursuant to R.C.731.32.
 {¶ 28} As set forth above, R.C. 731.32 requires a sworn statement that the copy attached to the referendum petition is "a true and exact reproduction of the original * * * ordinance * * *." In State ex rel. Steele v. Morrissey (2004),103 Ohio St.3d 355, the Ohio Supreme Court stated that the purpose of providing a copy of the ordinance "is to afford interested citizens an opportunity to * * * review the actual ordinance that is the subject of the referendum petition." Id., at ¶ 31. Accordingly, in order to ensure accuracy, "it is axiomatic that someone must affirm the truth of the title and text included in the initiative. That act requiresa signature." Id, at ¶ 24.[3]
 {¶ 29} It is undisputed that Dubler, a city employee, filled out a statement certifying that she supplied BGCSG with "a true copy of Ord. No. 7388 [and 7389] passed by the Council of the City of Bowling Green, Ohio. May 16, 2005 * * *." As noted by the trial court, Dubler represented in writing that she was "Acting on behalf of" the Bowling Green Clerk of Courts. It is further undisputed that the documents attached to the referendum petitions were, in fact, true and accurate copies of Ordinances 7388 and 7389.
 {¶ 30} On consideration of the foregoing, we find R.C. 731.32
does not require a "certified copy" of the ordinance in question to be signed by the official custodian of the applicable records, in this case the Bowling Green Clerk of Council. Accordingly, the trial court correctly determined copies of Ordinances 7388 and 7389 attached to the referendum petitions were properly certified by Dubler. Appellants' first argument is without merit.
 {¶ 31} Appellants next claim that, pursuant to R.C. 731.29
and 731.32, signed referendum petitions must be personally received by the city finance director. Accordingly, appellants argue the petitions are invalid because they were received by Hillier on Underwood's behalf.
 {¶ 32} As set forth above, compliance with election laws is mandatory. State ex rel. Golem v. Cuyahoga Cty. Bd. ofElections, supra; State ex rel. Mika v. Lemon, supra. Pursuant to R.C. 731.32, before circulating a referendum petition, a copy of the petition, along with a certified copy of the ordinance, shall be filed with the city auditor or village clerk. Similarly, pursuant to R.C. 731.29, the signed referendum petitions shall be "filed with the city auditor or village clerk within thirty days after any ordinance or other measure is filed with the mayor or passed by the legislative authority * * *."
 {¶ 33} In Edward Rose of Ohio, Inc. v. McLaughlin (1970),22 Ohio App.2d 190, the Second District Court of Appeals held that a signed referendum petition filed with the clerk of city council instead of with the city auditor was invalid. Similarly, in State ex rel. Bogart v. Cuyahoga Cty. Bd. of Elections
(1993), 67 Ohio St.3d 554, the Ohio Supreme Court held that a referendum petition was invalid because it was filed with the clerk of council/director of finance, instead of with the Beachwood City Auditor. Id. at 555. See also, Kubicki v. TheClermont Cty. Bd. of Elections, 12th Dist. Nos. CA20050-8-081, CA2005-09-082, 2005-Ohio-5382 (Appellate court held referendum petitions filed with the clerk of city council instead of the director of finance were invalid.)
 {¶ 34} In contrast, in Truman v. Village of Clay Center
(2005), 160 Ohio App.3d 78, this court held that a signed petition filed one day after the 30-day statutory period prescribed by R.C. 731.29 had passed was valid, because the village clerk did not keep regular business hours, and the office was closed to the public on the last day of the filing period. Id., at ¶ 56. Similarly, in Kittyhawk, Ltd. v. Ritter (Jan. 20, 1976), Butler App. No. CA74070064, the First District Court of Appeals upheld the validity of signed petitions filed with the Clerk of the Middletown City Commission instead of the city Finance Director because, immediately after receiving the petitions, the clerk placed them in the finance director's office. Id.
 {¶ 35} In this case, it is undisputed that the Bowling Green City Finance Director, appellee Underwood, functions as the city "auditor-in-fact," pursuant to Section 30.40 of the Bowling Green Code of Ordinances. It is further undisputed that the signed petitions were received by Hillier, not Underwood. However, in contrast to the facts in Edward Rose, State ex rel. Bogart, andKubicki, Hillier is an employee of the Bowling Green Finance Department, not a clerk in a separate city office.
 {¶ 36} As stated by the trial court, BGCSG went to the correct office and filed certified copies of the petition with a person in that office who had the apparent authority to accept them. As eloquently expressed by the appellate court inKittyhawk v. Ritter, supra, after considering similar factual circumstances: "There is no evidence of any fraud. On the contrary, we have inexperienced citizens as circulators, attempting to follow the law * * * to be sure, they succeeded. To usurp the powers of the people, so solemnly expressed, * * * would be substituting a legal technicality for substance." Id.
 {¶ 37} On consideration of the foregoing, we find the trial court correctly determined that BGCSG's petitions were not invalidated when they were received by Hillier. Any other conclusion would produce an absurd result by elevating the requirements of R.C. 731.29 and 731.32 over any and all practical considerations. Appellants' second argument to the contrary is without merit.
 {¶ 38} Appellants assert in their remaining claims that the petitions are invalid because: 1) Ebersole was not allowed to remove her name from the petitions; and 2) Underwood transmitted the petitions to the Wood County Board of Elections only two days after they were filed in her office. Appellants further assert that the trial court abused its discretion when it attempted to "cure" the alleged errors by rescinding the delivery of the petitions to the Wood County Board of Elections, ordering Underwood to keep them open for public inspection for ten days, and allowing Ebersole, and any other elector who signed the petitions, to withdraw his or her name during the ten day period.
 {¶ 39} In support of their argument that Ebersole should have been allowed to remove her name from the petition, appellants rely on State ex rel Crank v. Board of Commissions, LawrenceCty., Ohio (Feb. 7, 1994), 4th Dist. No. 92 CA 21. In Crank,
the Lawrence County Court of Appeals held that, "[i]n the absence of statutory provisions to the contrary, an elector who has signed a petition has the right to withdraw his signature from such petition at any time before official action has been taken on the petition." Id., citing State ex rel. Kahle v. Rupert
(1918), 99 Ohio St. 17. Appellants' reliance on these cases is misplaced, for the following reasons.
 {¶ 40} In State ex rel. Arnett v. Winemiller (1997),80 Ohio St.3d 255, the Ohio Supreme Court held that the filing of election petitions is governed not only by R.C. 731.28 et seq, but by R.C. 3501.38 which states, in relevant part, that:
 {¶ 41} "All declarations of candidacy, nominating petitions, or other petitions presented to or filed with * * * a board of elections or with any other public office for the purpose of * * * the holding of an election on any issue shall, in addition to meeting the other specific requirements prescribed in the sections of the Revised Code relating to them, be governed by the following rules:
 {¶ 42} "* * *
 {¶ 43} "(H) Any signer of a petition may remove the signer's signature from that petition at any time before the petition is filed in a public office by striking the signer's name from the petition; no signature may be removed after the petition is filed in any public office.
 {¶ 44} "(I) (1) No alterations, corrections, or additions may be made to a petition after it is filed in a public office. * * *"
 {¶ 45} Ultimately, the Ohio Supreme Court concluded inArnett that "[t]he plain language of R.C. 3501.38(H) and (I) expressly precludes the removal of signatures after the petition is filed with the applicable public office." Id. at 258. In that case, the "applicable public office" in which the petition was filed was the Union Township Clerk of Council and Director of Finance, Denise A. Winemiller. Id. at 255. Accordingly, "Winemiller was prohibited from to refusing to count initiative petitions signatures based on the signature removal forms filed with her after the filing of the petition." Id. at 258. See also,State ex rel. Fite v. Aeh (1997), 80 Ohio St.3d 1 (R.C.3501.38(H) and (I) prohibit the removal of signatures from a recall petition, where the city charter does not conflict with R.C. 3501.38, and the signature withdrawal petitions were received after the recall petition had been filed with the city clerk.)
 {¶ 46} On consideration, we find that, as a matter of law, Ebersole was barred from removing her name from the petitions after they were filed with Underwood. Appellants' claim to the contrary is without merit.
 {¶ 47} Finally, appellants assert that "[t]he 10-day period set forth in R.C. 731.28 and 731.34 is mandatory and failure to abide by it will preclude placement on the ballot." The remaining issue to be addressed, then, is whether the trial court was allowed to "cure" Underwood's error by rescinding the transmission of the petitions to the Board of Elections, returning them to Underwood, and ordering her to keep them open "for public inspection for ten days."
 {¶ 48} Appellants rely on State ex rel. Thurn v. CuyahogaCty. Bd. of Elections (1995), 72 Ohio St.3d 289, in which the Ohio Supreme Court stated that the purpose of the ten day waiting period in R.C. 731.28 and 731.34 is to allow "electors who have signed [an initiative] petition an opportunity to withdraw their names if they so desire." Id. at 294. On that basis, the Ohio Supreme Court invalidated a petition that was certified to the board of elections less than ten days after being filed with the village clerk. Id. However, in State ex rel. Arnett, supra, the above-quoted portion of Thurn was characterized by the Ohio Supreme Court as mere "dictum" and expressly rejected. Id. at 258. Accordingly, appellants' reliance on Thurn is misplaced.
 {¶ 49} Pursuant to R.C. 731.28, after a signed referendum petition has been filed with the city auditor-in-fact, "such auditor * * * shall, after ten days, * * * certify the text of the ordinance or measure to the board of elections * * *." Similarly, R.C. 731.34 states, in relevant part, that "[a]fter a petition has been filed with the [auditor-in-fact] * * * it shall be kept open for public inspection for ten days." Neither statute provides for the removal of names from the petition within that time period. In the absence of both statutory direction and controlling case law, we are compelled to construe the statutes governing municipal referendum liberally, so as to allow the exercise of such power. See State ex rel. Golem, supra; Stateex rel. King v. Portsmouth, supra. Accordingly, we find the trial court did not err by returning the petitions to Underwood and ordering them kept open for public inspection for an additional ten days.
 {¶ 50} On consideration, we find the trial court did not abuse its discretion by upholding the validity of the signed referendum petitions and denying appellants' request for a permanent injunction, or by ordering the petitions returned to Underwood and held open for ten days for public inspection. In addition, since Ebersole was not entitled to remove her name from the petitions, the trial court's erroneous attempt to allow her to do so was harmless. Appellants' sole assignment of error is not well-taken.
 {¶ 51} The judgment of the Wood County Court of Common Pleas is hereby affirmed, with the exception of the harmless error noted above. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in the preparation of the record, fees allowed by law, and the fee for filing the appeal are awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J., Parish, J., concur.
[1] Throughout this decision, references to appellant Rankin include any additional owners of the 40-acre parcel, who are not parties to this appeal.
[2] Although a copy of ordinance 7389 was attached to the petition, only Ordinance 7388 was challenged by BGCSG.
[3] In Morrissey, the Supreme Court ultimately held that an initiative petition bearing only proponents' preprinted names was invalid because it did not contain any actual signatures, as required by R.C. 731.32. Id., at ¶ 28.