The Ohio Power Co. *v.* Davidson et al., Board of Elections of Columbiana County.

(Decided October 8, 1934.)

*Mr. W. H. Vodrey*, for plaintiff.

*Mr. George L. Lafferty*, prosecuting attorney, and *Mr. Louis Tobin*, for defendants.

SMITH, J. This case, as originally filed in the Common Pleas Court of Columbiana county, sought an injunction to enjoin the Board of Elections from placing on the ballot and submitting at the November 6, 1934, general election, a proposed ordinance authorizing the city of East Liverpool, Ohio, to purchase or construct a municipal electric generating and distributing power plant in the city of East Liverpool, Ohio, to be considered by and to be voted on by the electors of East Liverpool, Ohio. A demurrer to this petition was filed, and the case came up for consideration in the Common Pleas Court on the demurrer. The demurrer was sustained, and the plaintiff not desiring to plead further final judgment was entered.

The case comes into this court on appeal from the Court of Common Pleas. On October 4, 1934, a temporary restraining order was entered by this court by consent of the parties, and the case was assigned for hearing on the demurrer on October 8, 1934. At the time of the hearing, October 8, plaintiff filed an

amended petition in this court, raising an additional ground, and on said date the defendants filed a demurrer to the amended petition, and the case was heard in this court on said demurrer.

It is alleged in the amended petition that the defendants are the duly appointed, qualified and acting members of the Board of Elections of Columbiana county, Ohio; that at 10:22 a. m., Wednesday, September 5, 1934, certain persons filed with Shelton J. Overdorf, auditor of the city of East Liverpool, Ohio, a duly certified copy of a proposed initiative ordinance for the purchase or construction of a municipal electric generating and distributing power plant; that at 10.22 a. m., Thursday, September 13, 1934, a petition in twenty-three parts was filed with the said City Auditor, with one thousand four hundred and forty-two signatures, proposing said initiative ordinance; that at 9:45 a. m., Monday, September 24, 1934, said City Auditor certified said petition to the defendants as the Board of Elections; that at 11:00 a. m., Monday, September 24, 1934, plaintiff attempted to inspect said petition at the office of the City Auditor and was informed by said City Auditor that said petition had been certified to the Board of Elections. It is alleged that plaintiff desired to inspect said initiative petition in order to complete a check which plaintiff was making as to the authenticity and validity of the signatures to said petition.

It is further alleged that defendants threaten to, and will, unless restrained by the court, submit the proposed initiative ordinance to the electors of said city of East Liverpool, Ohio, at the November 6, 1934, general election, and will use and expend the public moneys of the city of East Liverpool for the expenses of said election, to the irreparable injury of said city of East Liverpool.

The petition further alleges there is no legal author-

ity for the submission of said initiative ordinance to the electors, in that said ordinance cannot be initiated by the people; and, further, that any such action must be passed by council, subject to the referendum of the people.

The petition also alleges that the plaintiff is a taxpayer of the city of East Liverpool and that this action is brought in that capacity.

There are two questions raised in this case and we will state them in the inverse order to that in which they are alleged in the petition. First, that the electors of the city of East Liverpool have no legal authority to propose this ordinance by an initiative petition. Second, that the City Auditor certified said initiative petition to the Board of Elections of Columbiana county before the expiration of the time provided for by the statutes of Ohio.

On the first question, the authority, if any, is derived from the Constitution of Ohio as amended in 1912. The authority to do so is granted by Article XVIII, Sections 4 and 5, of the Constitution. Section 4 of Article XVIII is as follows:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

Section 5 of Article XVIII is as follows:

"Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company therefor, shall act by or-

dinance and no such ordinance shall take effect until after thirty days from its passage. If within said thirty days a petition signed by ten per centum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. The submission of any such question shall be governed by all the provisions of Section 8 of this article as to the submission of the question of choosing a charter commission.''

The right of the initiative and referendum is contained in Article II, Section 1*f*, which is as follows:

''The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law.''

Section 4 of Article XVIII, quoted above, grants the authority to the municipality to acquire, own or construct and operate a public utility. Section 5 of Article XVIII, quoted above, outlines the procedure necessary on the part of the municipality when it desires to exercise the rights granted under Section 4 of said Article XVIII. In order to reach a conclusion on this question, it becomes necessary to construe Section 1*f* of Article II and Section 5 of Article XVIII of the Constitution of Ohio.

Section 1*f* of Article II grants the general initiative and referendum powers of the electors of a municipality, and, if standing alone, there would be no question as to the right of the electors of the city of East Liverpool to propose an ordinance by initiative petition. Section 5 of Article XVIII, however, provides:

''Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract

with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage  *  *  *."

This section, then, provides for the filing within said thirty days of a referendum petition to submit said ordinance to a vote of the electors.

In the instant case, if the proposed ordinance to be submitted to the electors under this initiative petition were submitted, and a majority of the electors voted in favor of it, the effective date of said initiated ordinance would be suspended for a period of thirty days within which to file a referendum petition, to be submitted to the electors of said municipality at a special or general election following said date, which had prior to that time been submitted to the electors under an initiative petition. Such action, in our opinion, would be an absurdity. In other words, an initiative petition would be signed by the required number of electors of said municipality and submitted to a vote of the electors at the general election on November 6th, and if it were carried it would be immediately subject to a referendum petition that could be filed within thirty days after said election, to again be voted on by the same electors of said municipality.

It is true that Sections 4227-1 to 4227-13 of the General Code of Ohio outline the procedure to be followed in connection with initiative and referendum petitions. It is obvious, however, that the Legislature of Ohio cannot, by legislative act, grant any powers that are in conflict with the Constitution of Ohio.

It is therefore our opinion that Section 5 of Article XVIII is a limitation on Section 1f of Article II of said Constitution of Ohio. Having reached this conclusion, it therefore follows that the procedure outlined in Section 5 of Article XVIII must be followed, and that no right is granted by the Constitution of Ohio to the electors of a municipality to propose such

an ordinance by an initiative petition. At first blush this may seem to be a harsh ruling, but upon reflection it is apparent that the rights of the electors of the municipality are fully protected by the referendum provision of Section 5 of Article XVIII, in that no such action can be taken by the council of a municipality without the opportunity of the electors to pass upon the advisability of such action; and, if in the opinion of the electors such action is not advisable, they can, by their vote, prevent it. It does, however, preclude a small minority of the electorate of a municipality from subjecting the municipality to the expense of frequent elections on the question of the acquisition or construction of a utility.

We are mindful of the fact that in the case of *Goodman, a Taxpayer,* v. *City of Hamilton,* 21 Ohio App., 465, 153 N. E., 217, the Court of Appeals of the First Appellate District of Ohio has passed on this same question adversely to the conclusion reached by this court. We have carefully examined this decision and cannot follow the reasoning of that court in arriving at that conclusion.

The second question referred to in this case is the one contained in the original petition passed on by the court below, that the City Auditor of East Liverpool, Ohio, filed said initiative petition before the time provided for by the statutes of Ohio. Of course, the conclusion we have reached on the first branch of this case would not necessarily require a decision of the second question, but we think it advisable to pass on it also.

Section 4227-1, General Code, insofar as pertinent to this question, is as follows:

"When there shall have been filed with the city auditor if it be a city, or village clerk if it be a village, a petition signed by the aforestated required number of electors proposing an ordinance or other measure, said city auditor or village clerk shall, after ten days,

certify the petition to the board of deputy state supervisors of elections of the county wherein such municipality is located. * * *''

In this case the initiative petition, after it had been signed, was filed with the City Auditor at 10:22 a. m., September 13, 1934, and certified by the City Auditor to the Board of Elections at 9:45 a. m., on Monday, September 24, 1934. In order to pass on this question it is necessary to determine what is the proper rule for the computation of time under the above-quoted section.

Section 10216, General Code, is as follows:

''Unless otherwise specifically provided, the time within which an act is required by law to be done shall be computed by excluding the first day and including the last; except that the last shall be excluded if it be Sunday.''

Excluding the first day, the tenth day fell on Sunday, September 23rd. The law recognizes no fractions of days. If the ten days provided for in Section 4227-1, General Code, come within Section 10216, General Code, there is no question that Sunday, September 23rd, should have been excluded, and the City Auditor would have no right to certify said petition to the Board of Elections until after 12:00 p. m., on Monday, September 24, 1934. The Court of Common Pleas in this case held that Section 10216, General Code, does not apply to the computation of time in the instant case. It cites a number of authorities, including *Hagerman* v. *Ohio Building & Savings Assn.*, 25 Ohio St., 186; *State, ex rel. Jones,* v. *Bd. of Deputy State Supervisors and Inspectors of Elections of Montgomery Co.*, 93 Ohio St., 14, 112 N. E., 136; and *Heuck, County Aud.,* v. *State, ex rel. Mack*, 127 Ohio St., 247, 187 N. E., 869. The Common Pleas Court finds that Section 10216, General Code, applies where the time in question is that a certain act shall be taken

within a certain number of days, and that in all other instances the rule does not apply. We have examined all of the cases cited by the lower court, and a majority of this court do not concur in the conclusions there reached. In the cases cited the question of the computation of time was either so many days before a day certain, or not less than a certain number of days before a day certain. It seems clear to a majority of this court that under those conditions, the rule stated in Section 10216, General Code, would not apply. For illustration, where a petition to become a candidate for public office cannot be filed within less than sixty days prior to the general election, obviously, if the last day before said sixty days is on Sunday, the application of the rule of excluding that day would be a plain violation of the statute providing that such petition could not be filed within less than sixty days prior thereto. The same is true where the statute provides that an act must be done a certain number of days prior to a day certain. If the day before said day certain falls on Sunday, it would be a clear violation of said statute to exclude that day and include the day certain.

In the instant case it is provided that the auditor shall certify the initiative petition to the Board of Elections after ten days. No day certain is fixed by the statute in Section 4227-1. The majority of this court believe therefore that there is no reason for the application of the exception to the rule laid down in Section 10216, General Code. Let us consider the purpose for which this period of ten days is provided. It is obviously for the purpose of giving the electors, or any person interested in the question involved, an opportunity to inspect the petition to determine whether the names on the petition are electors of the municipality or whether the petition complies with law, and for the further purpose of giving the electors who

have signed the petition an opportunity to withdraw their names therefrom if they so desire. The 23rd of September being a Sunday, the court will take judicial notice that the office of the auditor of East Liverpool would be closed on that day and no opportunity would be provided for such inspection or for the filing of such withdrawal, and the time within which such inspection could be made or such withdrawal effected would be reduced by twenty-four hours. In the opinion of a majority of this court, this is a right that the electors and other persons interested in the subject matter have. No right of any person would be violated by applying the rule in Section 10216, General Code.

The leading case evidently relied upon by the court below is *State, ex rel. Jones,* v. *Bd. of Deputy State Supervisors, supra.*

The case of *Neiswander* v. *Brickner,* 116 Ohio St., 249, 156 N. E., 138, was an action to enjoin members of the Board of Education, elected for a school district within Putnam county, from acting in their official capacity as such school board. That case arose out of the following facts, which were pleaded in the petition and not denied in the answer. On April 24, 1925, the County Board of Education of Putnam county passed a resolution creating the Ottoville Village School District from territory which had prior thereto been parts of other school districts. On Saturday, May 23, 1925, there was filed in the office of the County Board of Education a remonstrance containing eight hundred and seventy names of electors of the territory affected. On Monday, May 25th, one hundred and sixty-three of the electors whose names appeared on the remonstrance in question filed with the Board of Education a written request that their names be withdrawn from the remonstrance. The thirty days from April 24, 1925, expired on Sunday, May 24,

1925. The syllabus is as follows:

"1. Under Section 4736, General Code, signers to a remonstrance may withdraw their names before and up to the end of the 30-day period allowed for the filing of the remonstrance.

"2. Under Section 10216, General Code, when the 30-day period provided for in Section 4736, General Code, expires upon a Sunday, signers of the remonstrance may withdraw their names therefrom upon the following Monday.

"3. Section 10216, General Code, applies generally to all acts required or permitted by law to be done and is not limited in its application to Part Third of the General Code. (*Kerr* v. *Keil,* 60 Ohio St., 607, 54 N. E., 1104, overruled.)"

On page 255 in the opinion, Judge Allen says:

"So far as the inherent meaning of the words employed is concerned, the section is broad enough to cover any act required or allowed to be done whether under statute or under contract within a time certain. We are at a loss to conceive of a more general phrase than this, and so far as the wording of the statute is concerned it is not limited in its application to Part Third of the General Code."

Further, at page 258, we find:

"While no express requirement of the Code compelled these plaintiffs to withdraw their names from the remonstrance within a given time, yet as the statute specifically set the 30-day period upon the filing of the remonstrance it did compel withdrawal to be made within that period, and hence the withdrawal was required by statute to be made within the 30 days, unless the last day fell upon a Sunday, in which case it could be done upon the following Monday."

In the instant case, any elector who had signed the initiative petition had a right to withdraw his name therefrom during the ten-day period provided by Sec-

tion 4227-1, General Code. The ten-day period falling on Sunday extended that right to the entire day of Monday, September 24, and a majority of this court find that the auditor had no right to certify said initiative petition to the Board of Elections until after 12:00 midnight, of said day.

The defendants not desiring to plead further, final judgment is entered herein making the temporary restraining order permanent.

*Decree for plaintiff.*

ROBERTS and LYNCH, JJ., concur, in the first proposition of this opinion.

ROBERTS, J., concurs in the second part.

LYNCH, J., dissents as to the second part of the opinion.