**In re Nancy W. COUCH TRUST u/w created November 10, 1978.**

**C.A. No. 1850–S.**

Court of Chancery of Delaware,
Sussex County.

Submitted: April 17, 1998.
Decided: June 26, 1998.

Stephen P. Ellis, (argued) and Lynn R. O'Donnell, of Sergovic & Ellis, P.A., Georgetown, Delaware, for Petitioner.

E. Scott Bradley, of Young, Conaway, Stargatt & Taylor, LLP, Georgetown, Delaware, for Respondent.

## OPINION

LAMB, Vice Chancellor.

### I. INTRODUCTION

Petitioner, Helen W. Ruff, the life income beneficiary of a testamentary trust, filed this petition on November 25, 1996 seeking (i) a determination that she is entitled to invade the trust principal to pay educational expenses of her children; and (ii) an order removing PNC Bank ("PNC") as trustee of the trust for allegedly abusing its discretion and acting in bad faith in its administration of the trust. Petitioner contends that the testamentary trust created for her and her children permits her to invade trust principal for the benefit of her children during her lifetime (*i.e.* funding their educational expenses). PNC, as trustee, contends that the trust instrument does not permit the trustee to invade trust principal for the benefit of the petitioner's children during the petitioner's lifetime unless the petitioner first demonstrates a need for resources to pay those expenses. Because the petitioner failed to demonstrate adequately a need for such disbursements pursuant to the terms of the trust instrument, PNC argues that she is not entitled to the educational disbursements she requests.

This is the post-argument decision on the petitioner's and the respondent's cross-motions for summary judgment. For the reasons stated herein, I will grant the respon-

dent's motion for summary judgment and, therefore, deny the petitioner's motion for summary judgment.

## II. BACKGROUND

### A. *Creation of the Trust*

Nancy W. Couch, a resident of Delaware, died testate on April 19, 1994. By her last will and testament, she devised her residuary estate to PNC (as successor in interest to Bank of Delaware) in trust for the benefit of her niece, petitioner Helen W. Ruff, and her niece's children and their issue. PNC, as trustee, is responsible for administering the trust and investing the trust assets. The testamentary trust provides in Section (1) that the net income from the trust shall be paid to the petitioner during her lifetime. Petitioner has no right to invade trust corpus, but Section (2) grants PNC the following discretionary power to make distributions of principal to her or on her behalf:

Trustee is authorized during the lifetime of [petitioner] to pay to her or to expend for her benefit, from time to time, so much of the principal of the Trust estate as Trustee, in its absolute discretion, shall deem necessary or desirable, because of an emergency, sickness or other need of [petitioner], of which Trustee shall be the sole judge, but having in mind the size and nature of the Trust estate and the other income and resources of [petitioner].

Section (3) of the testamentary trust provides that, upon the petitioner's death, the remaining trust estate is to be held in further trust by PNC for the benefit of the petitioner's children "who shall be living, for their support and education and for such other purposes for their benefit as Trustee shall consider desirable ." This further trust creat-ed by Section (3) empowers the trustee to expend:

so much of the income and principal of the trust estate as the Trustee shall deem best, not necessarily proportionately among them but for each such child according to such child's needs as may be determined by the Trustee, until the youngest of my said niece's children living to attain the age of twenty-one years shall attain that age.

After the youngest child reaches age twenty-one, the corpus of the Section (3) trust is divided in shares and distributed to the petitioner's children or their issue, *per stirpes,* in stages ending at age thirty years.

At the time of the decedent's death, her estate consisted mostly of marketable securities.[1] PNC's investment policy and strategy for trusts of this nature is, subject to specific requirements of the trust instrument and applicable law, to invest the trust assets in such a way as to balance the need to produce income for the income beneficiary (petitioner) against the need to increase and preserve principal for the remaindermen (petitioner's children). PNC's power to sell trust assets and invest proceeds in other investments, however, is limited by Item VIII of the decedent's will, which gives the petitioner the right to reject any PNC proposed sale, investment or reinvestment of trust assets.[2] PNC, therefore, is unable to alter the asset mix of the trust without the petitioner's consent.

From the creation of the trust and continuing up to the present, the trust administrator periodically contacted the petitioner to suggest she sell certain stocks and use the proceeds to buy other investments which would create more income for the petitioner. From time to time, the petitioner also initiated

1. In order to pay estate taxes at the time of the decedent's death, it was necessary for PNC, as executor, to sell some of the stocks and bonds. The remaining stocks and bonds in the estate were transferred to the trust. As of December 31, 1997, the value of the trust corpus had nearly doubled from its inception.

2. Item VIII provides in part as follows:
"[b]efore making any sale or exchange or any other disposition of the property forming the principal of the Trust estate established here-under, and before making an investment or reinvestment of any of the funds of the Trust estate in its possession for investment... Trustee shall report such proposed sale or exchange or other disposition or investment in writing to [petitioner], and if... Trustee secures the written or telegraphic approval of [petitioner]... Trustee may make such proposed sale or exchange or other disposition or investment."
Thus, prior to any disposition of trust assets, PNC must first obtain the petitioner's approval.

contact with PNC to ask that it alter the mix of assets to increase her income from the trust. While the petitioner approved some of the trust administrator's suggestions, she repeatedly refused to sell any of the Wilmington Trust Co. or (until later) PNC common stock held by the trust, despite the fact that these stocks yield little income and account for a significant portion of the value of the trust assets. Those stocks have performed well over the past several years and their increase in value accounts for a substantial portion of the growth in the principal of the trust.

### B. Request for Educational and Tax Reimbursements

On May 22, 1996, petitioner, through her legal counsel, sent PNC a form requesting a distribution to her of $20,846.00 to reimburse educational expenses paid for her daughter for the years 1993–94 [3] and 1995–96.[4] Petitioner also made a request for a $16,536.00 reimbursement for federal and state income taxes. Irrespective of the outcome of the requests, petitioner advised the trust administrator of her intention to seek the appointment of a successor trustee.

Upon receipt of the reimbursement application, PNC's trust administration officer prepared a memorandum, dated June 11, 1996, for the Administrative Review Committee ("Committee"). The memorandum recommended that the Committee approve payment of the educational expenses for the periods commencing after the trust was fund-ed. The memorandum recommended denying the request for reimbursement payments for the federal and state taxes. On June 12, 1996, the Committee met to discuss the petitioner's reimbursement application. Because the information was incomplete, the Committee reconstructed the petitioner's income and expenses with the information it was provided.[5] Based on this information, PNC informed the petitioner's counsel that the Committee had approved the reimbursement for both the federal and state taxes, but had denied the reimbursement request for educational expenses. The Committee determined, based on the information available to it, that paying both the tax payments and the tuition payments would present a hardship for petitioner. On that basis, the Committee agreed to disburse $16,536.00 from trust principal as reimbursement for the taxes incurred in 1995 and estimated to be incurred in 1996. Because the Committee interpreted the language of Section (2) of the testamentary trust to prohibit PNC, as trustee, from disbursing trust principal for the benefit of the petitioner's children during her lifetime, the Committee denied the petitioner's request for tuition reimbursement.[6]

### C. Petitioner Suggests Renunciation of a Portion of the Trust

As noted above, the terms of the trust following petitioner's death (the Section (3) trust) specifically contemplate the use of income and principal to pay the educational expenses of petitioner's children. In an attempt to have a portion of the trust assets

---

3. Petitioner requested reimbursement for educational expenses incurred in 1993–94, or prior to the establishment of the Trust.

4. On February 26, 1996, petitioner spoke to the trust officer designated by PNC as the primary contact for the administration of the trust, and requested a distribution of $12,000.00 in principal so that she could pay her daughter's college tuition in the fall. In response to the request, the trust officer sent petitioner a "Discretionary Invasion of Principal Request" form to complete and return. The form requires the applicant to provide (i) the reason for the request; (ii) the applicant's monthly income and expenses; (iii) the applicant's assets and liabilities; and (iv) a copy of the applicant's tax returns. Shortly after this request, the petitioner made a second request to invade trust principal to pay income

taxes. The trust officer sent petitioner another request form and reminded her that the requests could not be processed until the forms were completed and returned.

5. Because the petitioner did not provide her income for 1996, the Committee estimated what her income would be based on her 1995 income. In making this estimation, the Committee only took into account the actual income she received from the trust in 1996.

6. On June 26, petitioner requested the disbursement of $16,000 in principal so that she could pay her household expenses which she listed as $1,335 per month. Because the petitioner failed to provide a breakdown of the household expenses as requested by the trust administrator, her request was never considered.

administered pursuant to this section, petitioner considered whether or not to renounce a portion of the trust corpus sufficient to fund the anticipated educational expenses. While satisfied that a renunciation would have the desired consequences of funding the Section (3) trust, they determined that a substantial renunciation would result in sizable, adverse federal and state gift tax consequences. Thus, petitioner's counsel advised her to make annual renunciations in an amount not exceeding the applicable annual gift tax exclusion.

On August 20, 1996, petitioner's counsel sent a letter to PNC along with a draft agreement covering the procedure by which the petitioner would renounce a portion of the trust principal and income. The agreement provided only that the renounced portion would be administered in accordance with Section (3) of the trust instrument. The letter, however, stated "as you know, the sole purpose of the Agreement is to pay the education expenses of Mrs. Ruff's daughter." The letter stated that PNC should determine whether it agreed in concept to this approach.

In a letter dated August 30, 1996, PNC responded to the August 20 letter and draft agreement. PNC made two comments regarding the proposed renunciation plan. Initially, it indicated its willingness to recognize a one-time substantial renunciation by petitioner of the trust corpus which would then be administered in accordance with the terms of Section (3). It stated, however, that it was unwilling to participate in a scheme by which the petitioner would periodically renounce

small portions of the trust corpus and PNC would agree in advance to use the funds to pay the childrens' educational expenses. PNC viewed this as an attempt by the petitioner to achieve by renunciation a degree of control over the invasion of principal not permitted under the trust.[7] It stated its willingness, however, to recognize a renunciation of all or a substantial portion of the trust by petitioner which would then be administered independently of her and in accordance with the terms of the agreement.

### D. *Petitioner's Arguments*

Petitioner contends that the language of Section (2) should be construed to permit the invasion of trust principal to fund her childrens' educational expenses. She bases this argument in part on a conversation she had with the decedent in which the decedent allegedly indicated her desire that the trust should fund the childrens' educational expenses. Further, petitioner argues that: (i) the "or other need" language in Section (2) is meant to include paying her childrens' educational expenses, (ii) the size and nature of the trust estate is sufficient to meet this expense, and (iii) the phrase "income and resources of my said niece" does not include the income and resources of petitioner's husband. Thus, petitioner argues PNC breached its fiduciary duties by: (a) failing to reimburse the petitioner for education expenses; (b) refusing to reallocate the asset mix in accordance with the petitioner's requests; (c) preparing inaccurate fiduciary income tax returns for the trust;[8] and (d) until recently,

7. At oral argument PNC acknowledged that it could not prevent or prohibit the petitioner from renouncing any portion of the trust corpus. PNC has stated, however, that is unwilling to enter into an agreement whereby it would preapprove payment to petitioner of her children's educational expenses out of any funds renounced by the petitioner.

On May 13, 1998, the petitioner delivered to PNC a renunciation and disclaimer of trust principal. Evidently, PNC has agreed to administer these funds pursuant to Section (3) of the trust instrument. On June 4, 1998, one of petitioner's children requested a disbursement from trust principal to reimburse her for educational expenses incurred before the date of the renunciation. By letter dated June 15, 1998, PNC denied the request. The letter stated that it would

not be appropriate to make distributions for educational expenses incurred prior to the creation of the Section (3) trust. The letter went on to say, however, that the Committee had concluded that "[a]bsent extenuating circumstances, the beneficiaries [of the Section (3) trust] can expect that future educational expenses will be paid," and "[t]he trust permits payments for support. The Committee would like to work towards a suitable support program."

8. For the calendar year ending December 31, 1995, PNC prepared three fiduciary income tax returns for the petitioner which variously misstated the income distributed. A fourth return accurately stated the income. PNC does not dispute that errors were made in preparing the petitioner's tax returns, but claims that the errors

expressing its unwillingness to recognize a renunciation of less than a substantial portion of the trust by the petitioner. As a result of these alleged breaches, the petitioner seeks the removal of PNC as trustee.

### E. *Respondent's Argument*

Initially, PNC points out that the provisions of Section (2) relating to the invasion of principal give it "absolute discretion" of which it is to be "the sole judge." PNC also argues that the language of Section (2) authorizing the discretionary payment of principal "because of an emergency, sickness or other need of my said niece" does not, on its face, permit PNC to invade trust principal to meet a need of petitioner's children. Rather, PNC contends, Section (2) only permits it to make a disbursement of principal to petitioner for such things as, for example, her children's educational expenses, where those expenses are determined to qualify as a "need of [petitioner]." Thus, PNC argues that a finding of "need" required a showing that it would have been a hardship for petitioner to pay the expenses that form the basis of the discretionary request. As to petitioner's other arguments, PNC denies that its conduct breached its fiduciary duties .[9]

## III. DISCUSSION

The issues presented by these motions arise from structural elements in the provisions of Section (2) of the trust and the limited nature of the interest granted therein to petitioner. Petitioner is the sole beneficiary with a present interest in that trust, but its terms entitle her to receive only the net income therefrom. She is given no power to invade principal for any purpose. Petitioner's children have future interests in the trust. They or (should they not survive their mother) their issue will become entitled to receive the trust estate at her death, either subject to further trust as described in Section (3) or

free of trust. Today, however, they have no right to receive either income or principal from the trust.

PNC, as trustee, has the power under Section (2) of the trust instrument to pay principal to petitioner, but only in defined circumstances. The express terms of the trust do not give PNC the power to pay principal to or on behalf of anyone else, including petitioner's children, during petitioner's life. Moreover, the petitioner has limited recourse from any decision of the trustee denying, in whole or in part, any request made by her for an invasion of principal. This is so because the trust vests in the trustee "absolute discretion" in making such decisions and specifies that the trustee is to be "the sole judge" of the "emergency, sickness or other need" said to justify such invasion.

Finally, Section (2) provides that, in determining whether to pay principal to petitioner, PNC is to "hav[e] in mind the size and nature of the trust estate and the other income and resources of [petitioner]." In requesting payment of principal to meet her childrens' educational expenses and to pay taxes, petitioner refused to provide PNC with financial information about her husband's income or financial resources, notwithstanding the lack of evidence that either the tax liability or the payment of educational expenses are the responsibility of petitioner alone. No doubt, the omission of this information has made it difficult for PNC to assess petitioner's need to invade trust principal to fund obligations which do not appear to be her sole responsibility.

These factors combine to create a conflict between the trustee and petitioner, who is adamant that trust principal be employed to fund the educational expenses of her children without any showing of need on her part. No doubt she is sincere in her belief that the decedent intended such a use; however, I am

---

were discovered in time and never resulted in any additional tax.

**9.** PNC notes that it considered the petitioner's request for educational expense even though they were her daughter's expenses and not her own. It argues that the "other resources" language in the trust should be construed to include her

husband's income, especially since the request included his daughter's college expenses and his income taxes. Despite its position that this information was relevant and should have been disclosed, PNC considered her request even though the petitioner failed to provide complete financial information.

unable to conclude that such use is consonant with the terms of the trust instrument actually created.

## A. PNC's Denial of the Request for Educational Expenses

In trust construction cases, any analysis begins with the seminal rule that the settlor's intent controls the interpretation of the instrument. *Annan v. Wilmington Trust Co.*, Del.Supr., 559 A.2d 1289, 1292 (1989). Intent is determined by "considering the language of the Trust instrument, read as an entirety, in light of the circumstances surrounding its creation." *Id.* (quoting *Dutra De Amorim v. Norment*, Del.Supr., 460 A.2d 511, 514 (1983)). Words used in the instrument are generally given their ordinary meaning, and the Court will not consider extrinsic evidence to vary or contradict express provisions of a trust instrument that are clear, unambiguous and susceptible of only one interpretation. *Wilmington Trust v. Annan*, Del.Ch., 531 A.2d 1209, 1211 (1987), *aff'd* 559 A.2d 1289 (1989). Only if this analysis fails will the Court resort to the rules of construction. In the present action, I am called upon to consider the ordinary meaning of the phrases "or other need of [petitioner]" and "income and resources of [petitioner]" found in Section (2) of the trust. In order to glean their meaning, however, they must be viewed in the context in which they appear in the trust instrument.

Section (2) authorizes PNC, as trustee, to make disbursements for the petitioner's benefit "because of an emergency, sickness or other need of my said niece." Petitioner attempts to interpret the "other need" language to include the funding of her children's educational expenses. When this section is read in conjunction with Section (3) of the trust instrument authorizing the disbursement of funds to the children, however, it becomes apparent that the petitioner's interpretation is misplaced.

Section (3) provides for the future administration of a separate trust, one in which petitioner's children and their issue are the sole beneficiaries. It expressly provides that PNC shall make disbursements from that trust to petitioner's children of both income and principal "for their support and education and for such other purposes for their benefit as Trustee shall consider desirable." Thus, while the trust does not specifically mention disbursements for educational expenses during the petitioner's lifetime, after her death it not only authorizes such disbursements, it directs PNC to pay such expenses. In the circumstances, I cannot interpret the language of Section (2) to authorize the payment of trust principal to fund the educational expenses of petitioner's children, unless such expenses are shown to constitute a "need" of petitioner.

Because the petitioner is not entitled, as a matter of right, to reimbursement for educational expenses of the children, the question is whether PNC abused its discretion in denying the petitioner's disbursement request. In making a determination as to whether to grant a disbursement request, the trust confers upon the trustee the power to determine whether:

> in its *absolute discretion* ... [Trustee] shall deem necessary or desirable, because of an emergency, sickness or other need of my said niece, of which Trustee shall be the *sole judge*, but having in mind the size and nature of the Trust estate and the other income and resources of my said niece. (emphasis added).

Petitioner argues that PNC abused its discretion in refusing to reimburse her for the educational expenses.[10]

In analyzing whether PNC properly exercised it discretionary powers, the Court will not substitute its own judgment for that of PNC unless it is found that it acted in bad

---

**10.** Petitioner argues the phrase "other income and resources of my said niece" does not include her husband's financial resources. Because she failed to supply any information regarding her husband's finances, the Committee did not take her husband's financial condition into account when making its determination. Thus, I need not resolve this question with regard to the present action. I note, however, that the phrase is not so limiting as to prevent PNC from requiring disclosure of the husband's financial resources where there is no showing that the husband is not jointly responsible for such expenses.

faith or in an arbitrary or unreasonable manner. *See Wilmington Trust Company v. Coulter,* Del.Supr., 200 A.2d 441, 449 (1964) (stating that court may not substitute its judgment for the business judgment of the trustee); 3 Scott on Trusts § 187 (4th ed.1988) (stating that to the extent to which trustee has discretion court will not control his exercise of it so long as he does not exceed the limits of the discretion). In the present circumstances, there is no substantial evidence to suggest that PNC did not act within its discretionary powers. In response to a request for disbursement, PNC requested certain information so that it could adequately assess whether it was appropriate to approve the request. Based on the information the petitioner provided, PNC decided that while it would be a hardship for the petitioner to pay taxes, the petitioner had adequate resources to pay the educational expenses. I am unable to conclude that the decision not to pay both tax and educational expenses was improper or not fully authorized by the language of the trust instrument. As such, the Court will not substitute its judgment for that of PNC nor second-guess its decision.

Because I conclude that PNC acted within its authority in denying the petitioner's request for reimbursement of educational expenses, it follows that PNC did not breach its fiduciary duties in denying her request for educational expenses. Further, the evidence fails to demonstrate any other basis to justify removing PNC as trustee.

B. *PNC's Refusal to Participate in Petitioner's Attempted Partial Renunciation Plan*

■ Petitioner contends that PNC's refusal in August 1996 to agree to the terms of her proposed renunciation of a portion of the trust corpus constituted a breach of its fiduciary duties. I cannot agree. At oral argument, PNC's counsel conceded that, in general, PNC had no power or right to refuse to recognize a renunciation by the petitioner,

leaving her free to renounce as much or as little of the trust principal as she may wish.[11] Even so, PNC was fully justified in 1996 in refusing to agree in advance to apply the funds in the resulting trust for the childrens' education expenses and insisting that it then be able to "operate independently of Mrs. Ruff in accordance with the terms of the agreement." I see nothing wrong with this position. Indeed, if PNC had agreed in advance to limit its discretion in the management of the resulting trust, that agreement might have amounted to a breach of its fiduciary duties. Moreover, I see no inconsistency between this position and the recently announced conclusion of the Committee that "[a]bsent extenuating circumstances, the beneficiaries [of the Section (3) trust] can expect that future educational expenses will be paid". This statement simply confirms the Committee's entirely reasonable interpretation of the language of Section (3) of the trust instrument.

C. *Reallocation of Asset Mix*

■ Petitioner contends that PNC has refused to reallocate the asset mix so as to increase the income she receives from the trust. She asserts that PNC's refusal to abide by her wishes constitutes a failure to administer the trust in good faith and in accordance with the interests of the income beneficiary. There is no evidence to support her contention.

■ The standard of care that a trustee must exercise when investing trust assets is set forth in 12 *Del C.* § 3302(a), which states:

[w]hen investing, reinvesting, purchasing, acquiring, exchanging, retaining, selling and managing property for the benefit of another, a fiduciary shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use to attain the purposes of the account. In making investment decisions, a fiduciary may con-

11. I do not mean to imply that there are not circumstances in which a trustee would be justified in refusing to recognize the validity of a partial renunciation. Without suggesting any connection to the matter now before me, it is possible to imagine circumstances in which a renunciation is done for the purpose of harrassing the trustee or interfering with the proper administration of the trust.

sider the general economic conditions, the anticipated tax consequences of the investment and the anticipated duration of the account and the needs of its beneficiaries. A party alleging that a trustee has failed to comply with this standard has the burden of proving it. *Lockwood v. OFB Corp.*, Del.Ch., 305 A.2d 636 (1973). As previously noted, PNC's investment policy is to invest the trust assets so as to balance the need to produce income for the income beneficiary against the need to increase and preserve the principal for the beneficiaries. While the trust instrument does not give the petitioner the right to direct the investment of the trust, it does require PNC to submit its investment proposals to her for approval, thus giving her veto power over PNC's proposals to sell and reinvest proceeds.

Since the trust's inception the petitioner has periodically requested that PNC alter the trust's asset mix to generate greater income from the trust. While it is true that the petitioner has mentioned the need for more income from the trust, she has also refused to approve many of PNC's recommendations that would have increased her income from the trust. Petitioner's rejection of these proposals has stymied PNC's efforts to make meaningful changes to the asset mix. While the petitioner is fully within her right in refusing to approve PNC's proposals, she cannot now be heard to complain that PNC has failed in its duties to diversify assets. The record wholly supports the conclusion that PNC has endeavored to abide by the petitioner's wishes and has in all other respects lived up to its fiduciary duties as they pertain to its investment strategy regarding the trust. There is no credible evidence to the contrary.

D. *Fiduciary Income Tax Returns*

 Petitioner argues that PNC breached its fiduciary duties in that it made mistakes in preparing the fiduciary tax returns for the trust. PNC acknowledges that it made an error in preparing the 1995 K–1 schedule that shows the amount of income the petitioner received from the trust. PNC was able to correct the error and file the trust's tax return on time. Further, it contacted its tax administration section to ensure that the error does not occur in the future. No one questions the fact that it is essential that the trust's tax returns are properly completed and filed in a timely manner. While it is unfortunate that this error occurred, I am satisfied that PNC has taken appropriate steps to correct the problem, and in fact it appears that the tax returns filed since were accurately prepared and filed in a timely manner. This one instance is not so grievous as to constitute a sufficient basis upon which to remove PNC as trustee.

E. *PNC is Entitled to have its Attorney's Fees Paid Out of the Trust Assets*

 Petitioner argues that PNC's self-help payment of $15,776.18 from the trust principal to pay the attorney's fees it incurred in contesting this petition constitutes a breach of PNC's fiduciary duty. The Supreme Court has articulated two situations in which an allowance from a trust corpus for attorneys' fees may be made: (i) when the attorneys' services were necessary for the proper administration of the trust; or (ii) where the services otherwise resulted in a benefit to the trust. *Bankers Trust Company v. Duffy*, Del.Supr., 295 A.2d 725, 726 (1972). *See also In re Seller's Estate*, Del. Ch., 67 A.2d 860, 873 (1949); *Delaware Trust Co. v. Brady*, Del.Ch., C.A. No. 8827, Allen, C., 1988 WL 94741 (Sept. 14, 1988) (stating in action to remove trustee application for attorney's fees must be premised on assertion that (i) trustee is being sued in capacity as trustee; (ii) in defending suit trustee is motivated to protect the best interests of the trust; and (iii) the trustee has a reasonable basis for doing so and is done in good faith); 3 Scott on Trusts § 188.4 (4th ed.1988) (where trustee properly defends a proceeding for the benefit of the trust estate he is justified in incurring reasonable expenses including employing an attorney as long as trustee was not at fault in causing the litigation). In the present action, I conclude that PNC did not breach its fiduciary duties in regard to its administration of the trust. It has successfully defended against the petitioner's attacks on its administration of the trust as well as her attempt to remove it as

trustee. PNC's successful defense of these charges directly benefit the trust and its beneficiaries and as such should fairly be charged against the trust estate. Under the circumstances, while the better practice would have been to await the Court's determination and then apply for a fee allowance, PNC is entitled to the reasonable costs it has incurred in defending this petition, including its attorney's fees.

## IV. CONCLUSION

For all of the foregoing reasons, I deny the petitioner's motion for summary judgment and grant the respondent's motion for summary judgment. The parties are directed to submit a form of order.