**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1473

_____

FRIEDA MAE ROGERS, formerly known as Frieda Rogers Roen; PREMIER TRUST
INC, a Nevada corporation, as Trustee of the Frieda M. Roen Resulting Trust u/a/d July
19, 1934,
            Appellants

v.

WILMINGTON TRUST COMPANY, a Delaware corporation;
WILMINGTON TRUST INVESTMENT ADVISORS INC., a Maryland corporation

_____

On Appeal from the United States District Court
for the District of Delaware
(District Court No. 1:18-cv-116-CFC)
District Judge: Honorable Colm F. Connolly

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 4, 2021

_____

Before: SHWARTZ, RESTREPO, and SCIRICA, *Circuit Judges*.


(Filed: March 3, 2022)

———————
OPINION*
———————

RESTREPO, *Circuit Judge*.

Frieda Rogers and Premier Trust appeal the District Court's judgment in its favor

for breach of trust, equitable fraud, and financial elder abuse claims and grant of leave to

amend Wilmington Trust's answer.[1] We will affirm for the reasons that follow.

## I. DISCUSSION[2]

### A. Breach of Trust

Appellants argue the District Court erroneously rejected each of Wilmington Trust's

eight alleged breaches of fiduciary duty to the Trust. We address each in turn, and

ultimately, affirm the judgment in favor of Wilmington Trust.[3]

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Appellants do not challenge the judgment on the claim pursuant to the Investment Advisors Act of 1940.
[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C § 1291. We review findings of fact in a bench trial for clear error and conclusions of law *de novo*. *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 282–83 (3d Cir. 2014). We review a decision to grant or deny leave to amend a complaint for abuse of discretion. *Winer Family Tr. v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007).
[3] The District Court correctly upheld the Trust Agreement's exculpatory provision as enforceable, and accordingly, Plaintiff-Appellants were required to show that Wilmington Trust actions, or lack thereof, constituted fraud, willful misconduct, or gross negligence. *Rogers v. Wilmington Tr. Co.*, Civil Action No. 18-116-CFC, 2021 U.S. Dist. LEXIS 35293, at *30 (D. Del. Feb. 25, 2021). Delaware courts routinely recognize the propriety of exculpatory provisions limiting a trustee's liability for innocent or negligent misrepresentation. *See*, *e.g.*, *J.P. Morgan Tr. Co. of Del., Trustee of the Fisher 2006 Tr. v. Fisher*, 2021 WL 2407858, at *13 (Del. Ch. June 14, 2021) (upholding identical exculpatory provision).

### i.  *Lock-Up Theory* [4]

The District Court properly found that Premier's counsel expressly waived any fiduciary claim "premised on Wilmington Trust's investment in a Wilmington Private Fund."[5] Premier argues it never waived its claims because its claims were premised on the retention—not the purchase—of the Private Funds and on Wilmington Trust's alleged failure to disclose the transfer restrictions. As the record demonstrates, the District Court clearly understood Premier's explicit waiver to include any alleged wrongdoing stemming from the purchase of the Private Funds. Despite this clear indication, Premier's counsel made no effort to clarify that it never intended to waive such claims. Even if it had not been waived, the lock-up theory fails because multiple witnesses testified that the liquidation and its associated tax consequences were avoidable[6], and thus Wilmington Trust did not force Rogers to choose between replacing it and avoiding tax consequences.

Even if Premier indicated before and during trial that their lock-up claim was focused on retention rather than purchase, this would not make the District Court's decision to rely on Premier's clear disavowal unreasonable.[7] Counsel for Premier stated that the

---

[4] Specifically, Premier argued that because the Funds were not transferrable to other trustees without Wilmington Trust's consent and Wilmington Trust had an unwritten policy of never giving such consent, Wilmington Trust prevented Rogers from being able to replace the trustee without liquidating the Wilmington Private Funds assets, which would trigger significant tax consequences due to the capital gains accrued on those assets. App. 298; 803.

[5] *Rogers*, 2021 U.S. Dist. LEXIS 35293, at *27–28.

[6] App. 530; 619-20

[7] *See Clark v. Twp. of Falls*, 890 F.2d 611, 621 (3d Cir. 1989) (finding waiver regardless of "whether counsel's concession was made for strategic reasons or by mistake").

purchase of the private funds is not "part of [their] case."[8]  Accordingly, the District Court did not abuse its discretion in finding Premier waived all claims relating to the purchase of the Wilmington Private Funds.[9]

### ii.    *Excessive Fees Theory*

The District Court concluded Premier never alleged[10], and therefore waived, any claim that Wilmington Trust collected excessive fees.  The District Court also found that even if not waived, the excessive fees claim would be rejected for failure of proof and on statute of limitations grounds.[11]  Appellants correctly note that allegations in the Pretrial Order and Amended Complaint served to preserve the excessive fees theory of liability.[12]  Despite this, we affirm the District Court's alternative finding that the statute of limitations in 12 Del. C. § 3585 barred the excessive fees claim.

Appellants argue the District Court erroneously relied on documents that provided inadequate notice or were defective, as a matter of law, and thus, could not trigger the statute of limitations period.  But "report" is not a defined term, and Appellants point to no evidence that Delaware's legislature intended disclosures putting beneficiaries on notice to take a certain form.  Likewise, we have found no Delaware case law suggesting a "report"

---

[8] App. 378.
[9] *See La Rossa v. Sci. Design Co.*, 402 F.2d 937, 939 (3d Cir. 1968); *see also RES-GA Cobblestone, LLC v. Blake Const. & Development, LLC*, 718 F.3d 1308, 1313 n.6 (11th Cir. 2013) (concluding express disavowal of claims during oral argument constitutes abandonment).
[10] *Rogers*, 2021 U.S. Dist. LEXIS 35293, at *32.
[11] *Id.*
[12] *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) (a claim included in a pretrial order controls the action even if the pleadings were never formally amended).

4

must take a certain form to trigger the statute of limitations, nor do Appellants cite any decision to that effect.[13]

Moreover, even if Rogers did not receive adequate notice, Premier itself received notice in January of 2015,[14] and that fact alone would bar the claim entirely. We will therefore affirm the District Court.

### iii. *Tax Plan Theory*

Premier also argued that Wilmington Trust breached its fiduciary duty through its failure to engage in tax planning for the Trust. The District Court found that Premier failed to establish how Wilmington Trust's failure to engage in tax planning proximately caused any damage to the Trust. We review for clear error.[15]

We see no reason to disturb the District Court's finding. Crucially, Premier fails to explain how any efforts by Wilmington Trust to tax plan would have prevented the alleged losses in the form of capital gains taxes. They make the conclusory statement "[t]hese damages was [sic] caused by WTC's failure to tax plan." D. Ct. ECF No. 359 at 39. But such unsupported allegations are not enough to plead causation, let alone establish it at trial.[16] Because we find the District Court correctly concluded Premier failed to establish

---

[13] *Cf. In re Thomas Lawrence Reeves Irrevocable Tr.*, 2015 WL 1947360, at *9 (Del. Ch. Apr. 29, 2015) (finding § 3585 barred claim because beneficiary received generic account statements disclosing facts of claim).

[14] We note the District Court did not rely upon notice to Premier, and only relied upon notice to Rogers. Either way, the claim is time-barred.

[15] *See Taylor Milk Co. v. Int'l Bhd. of Teamsters, AFL-CIO*, 248 F.3d 239, 245 (3d Cir. 2001).

[16] *See Oliver v. Roquet*, 858 F.3d 180, 194 (3d Cir. 2017) (stating that an "unsupported conclusory assertion" is insufficient to plead causation); *see also A.G. ex rel. Maddox v. Elsevier Inc.*, 732 F.3d 77, 83 (1st Cir. 2013) (same).

proximate cause, we need not address whether Wilmington Trust was obligated to conduct tax planning in the first instance.[17]

### iv. *Suitability of Trust's Investments*

Premier also challenges the District Court's conclusion that Premier failed to prove Wilmington Trust's selection of investments were inconsistent with the purposes of the Trust.[18] Under Delaware law, a trustee is required to select investments to "attain the purposes" of the trust.[19] When a trust lacks an express purpose, the settlor's intent, as indicated by the language of the trust instrument, controls the trust.[20] Here, the trust lacks an express purpose, but Premier has not shown how Wilmington Trust was grossly negligent in selecting investments; multiple employees repeatedly asked Rogers to provide information about her needs and expenses,[21] as well as the needs of Rogers' children, who were the Trust's remainderman.[22] Thus, the District Court properly rejected Premier's theory.

---

[17] And in any case, Wilmington Trust is incorrect because the District Court did not find Wilmington Trust under no duty to conduct tax planning. The language Wilmington Trust cites is from a preliminary hearing where the District Court expresses hesitancy about Premier's theory.
[18] *Rogers*, at 30.
[19] 12 Del. C. § 3302(a).
[20] *In re Couch Tr.*, 723 A.2d 376, 382 (Del. Ch. 1998).
[21] App. 948-49, 390, 512, 515-16
[22] App. 534.

### v. *Conflict of Interest*

Premier argued that Wilmington Trust breached its fiduciary duties due to a conflict of interest when it acted as both Trustee and Advisor, but Premier cites no authority establishing a conflict. Under Delaware law, an advisor may be "given authority by the terms of a governing instrument to direct, consent to or disapprove a fiduciary's actual or proposed investment decisions,"[23] and the Trust Agreement so provided.[24] The Trust Agreement does not, however, prohibit the Trustee from being an Advisor.[25] Moreover, even if there were a conflict of interest by serving both roles, Rogers appointed Wilmington Trust as Advisor and cannot complain now of the conflict.[26]

### vi. *Misrepresentations Regarding a "Never Consent to Transfer" Policy*

Premier argued that Wilmington Trust misrepresented restrictions on the Wilmington Private Funds in two ways: (1) its affirmative statements in January 2015 that the Funds were not transferrable, and (2) its failure to disclose Wilmington Trust's historical practice of never consenting. The affirmative statements, however, were true and thus cannot serve as the basis for a misrepresentation claim. In addition, any omission is likely not material[27] because neither Rogers nor Premier ever requested consent and were

---

[23] 12 Del. C. § 3313(a).
[24] App. 888.
[25] App. 871.
[26] App. 3000.
[27] *In re Donald J. Trump Casino Sec. Litig.-Taj. Mahal Litig.*, 7 F.3d 357, 369 (3d Circ. 1999) (holding an omitted fact is material if there is "substantial likelihood that a reasonable [investor] would consider it important in deciding how to act").

thus unaffected by a policy that made such consent difficult or impossible to obtain. We thus conclude that Premier has failed to prove a misrepresentation theory of breach.

### vii.  *Delivery of the K-1s*

Premier claimed Wilmington Trust is liable for breach of trust because of its failure to deliver the K-1s for the 2014 tax year before Premier filed the taxes in September 2015. The District Court rejected this theory based on two findings: 1) as a matter of law, any failure of communication surrounding the delivery of the 2014 K-1s lies with Premier because "[it] was obligated as the trustee as that point to file those returns, and it had an obligation to follow up to obtain the documents from Wilmington Trust," J.A. 802 (Tr. 1251:3–6); and 2) as a matter of fact, "[t]he unrebutted testimony of Richard Capuano established . . . that Wilmington Trust sent Premier all required K-ls before September 2015." Premier challenges both conclusions.

First, Premier contends it did not have a duty to follow up about the 2014 K-1s. We disagree. Premier mistakenly assumes that Delaware law does not require a successor trustee to "inquire into or confirm the validity of the predecessor trustees' actions." Premier omitted the opening clause of § 3544, "[u]nless provided otherwise by the terms of the governing instrument." In this case, the Trust Agreement requires the Trustee to "prepare and file all tax returns required by law to be filed on behalf of the trust." It follows then, as the District Court concluded, that Premier was obligated to obtain the necessary K-1s, and thus required to follow-up regarding their delivery.

8

Second, Premier contends the District Court erroneously found that Wilmington Trust delivered the required K-1s prior to Premier's filing in September 2015. Premier argues that Wilmington Trust conceded that it could not confirm "when federal K-1[s] . . . were actually sent or delivered to Premier" in pretrial stipulations. But so long as the K-1s were delivered prior to Premier's tax filing in September of 2015, as the District Court correctly concluded, the exact date of delivery is irrelevant. We see no reason to disturb this factual finding, which is well-supported by the record.

Accordingly, the District Court correctly concluded that Premier was obligated to follow up about the 2014 K-1s and did not err in finding the required K-1s delivered prior to September 2015.

### viii.    *RFLP Funds*

Before the District Court, Premier argued Wilmington Trust breached its duties because it failed to fully convey the Trust's interest in the Rogers Family Limited Partnership ("RFLP"), based on calculations by their expert witness.[28] The District Court rejected this contention by weighing the testimony of both trial witnesses, and ultimately found, Wilmington Trust's witness credible.[29]

---

[28] Based on Dr. Luna's audit, she testified that an additional $607,278.00 should have been transferred to the trust upon the dissolution of the RFLP.

[29] The District Court credited McCann's testimony and found Dr. Luna's testimony was based on an arithmetic error. Because this is a finding of fact, we review for clear error. *See VICI Racing, LLC*, 763 F.3d at 283.

We conclude the District Court did not err in so finding, because special deference is paid its credibility findings.[30] Therefore, we affirm the judgment finding that Wilmington Trust is not liable for any alleged breaches of trust.

## B. Equitable Fraud

Appellants appeal the District Court's finding that Wilmington Trust was not liable for misrepresenting the availability of K-1s for the Wilmington Private Funds. The District Court found that Premier had not put forth any evidence that Kennedy's statements were false, and thus Wilmington Trust cannot be liable for equitable fraud. For the following reasons, we affirm the District Court's findings and judgment.

As we already held the enforceability of the exculpatory provision, we only address Premier's other arguments that, (a) if enforceable, the clause does not exculpate liability for innocent or negligent misrepresentation or does not apply to actions in January and July 2015, and (b), either way, Kennedy was grossly negligent. Neither is convincing, so we affirm.

We first consider the scope of the exculpatory provision. Appellants argue the provision should be interpreted to include common law fraud because any ambiguity should be construed against Wilmington Trust as the drafter of the provision. Nevertheless, the District Court properly concluded there was no ambiguity in this term.[31]

---

[30] *See Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).
[31] *See Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d. 354, 360 (Del. 2013) (construing provision against drafter only when there is ambiguity).

"A contract is not ambiguous simply because the parties do not agree upon its proper construction, but only if it is susceptible to two or more reasonable interpretations."[32] Moreover, construing a contract against a drafter is a rule of "last resort" and applies only when other methods of interpretation fail.[33]   Finally, "the settlor's intent controls the interpretation of the [trust] instrument" as "determined by considering the language of the trust instrument."[34]

Here, the language of the Trust Agreement unambiguously indicates a settlor's intent to limit the trustee's liability for equitable fraud.  The term "fraud" is listed together with "willful misconduct" and "gross negligence."  Construing the term "fraud" to include "equitable fraud" would defy the settlor's intent to limit a trustee's liability for negligent, or innocent misrepresentation.[35]  For this reason, the only reasonable interpretation of the exculpatory clause is it retains liability only for common law fraud.

Premier next argues that the exculpatory clause does not apply to Kennedy's communications, because at that point, Wilmington Trust was no longer a fiduciary having been removed as trustee.  As the District Court correctly noted at the pretrial hearing,

---

[32] *Id.*
[33] *Wilmington Firefighters Ass'n Local 1590 v. City of Wilmington*, No. Civ. A. 19035, 2002 WL 418032, at *10 (Del. Ch. Mar. 12, 2002); *see also E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985) (stating that this rule is "one of last resort, such that a court will not apply it if a problem in construction can be resolved by applying more favored rules of construction").
[34] *In re Peierls Family Inter Vivos Trs.*, 77 A.3d. 249, 265 (Del. 2013) (quotations omitted).
[35] *See Zebroski v. Progressive Direct Ins. Co.*, No. 8816-VCP, 2014 WL 2156984, at *7 (Del. Ch. Apr. 30, 2014) (explaining that for equitable fraud, "the claimant need not show that the respondent acted knowingly or recklessly—innocent or negligent misrepresentations or omissions suffice.").

11

Wilmington Trust's duty, and thus Premier's basis for an equitable fraud claim, could only arise from its role as trustee.[36]

Finally, Appellants contend the District Court erroneously found that Premier did not establish Kennedy's conduct "was an 'extreme departure' from industry norms that is required for a finding of gross negligence."[37]  Premier argues that "Kennedy was grossly negligent in making her July 2015 statement because she had previously been informed that some of the WPF were already available."  But, as the District Court correctly pointed out, Premier failed to prove Kennedy "had not so been informed."[38]   In any case, the trial judge found her statement would still be true even if Kennedy knew some of the K-1s were available, because a reasonable interpretation is she was saying that not all K-1s would be ready until early September.  Indeed, it is undisputed that K-1s relating to certain hedge funds were only available in the first week of September 2015.  Accordingly, Kennedy's statements were true and not grossly negligent, and the District Court properly found Wilmington not liable for equitable fraud.

### C.  Financial Elder Abuse

Rogers challenges the District Court's finding that Wilmington Trust did not commit financial elder abuse in violation of section 15610.30 of the California Welfare & Institutions Code.

---

[36] *See Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 144 (Del. Ch. 2009) (equitable fraud requires a fiduciary relationship).
[37] *Rogers*, 2021 U.S. Dist. LEXIS 35293, at *42.
[38] Appellants' Br. at 43.

To prevail on this claim, Rogers must prove that Wilmington Trust deprived her—while she was 65 or older—of a property right when it knew or should have known that the deprivation would likely cause her harm.[39]   The District Court found she had not established that Wilmington Trust's actions constituted a "taking" as defined by the statute. The record shows no evidence of appropriation of Roger's funds for a wrongful use and the District Court found that dispositive of the claim.[40]   The District Court specifically determined that, even if causing adverse tax consequences could constitute a taking of property, it was Premier that ordered the liquidation of the Wilmington Private Funds and caused the adverse tax consequences.[41]

Accordingly, we affirm the District Court's Order.

### D. Leave to Amend

Appellants argue the District Court abused its discretion in granting leave to Wilmington Trust to amend its answer to include a statutory counterclaim for attorney's fees.

Generally, leave to amend a pleading "should [be] freely give[n] . . . when justice so requires."[42]   A district court may deny leave upon finding undue delay, bad faith,

---

[39] Cal. Welf. &Inst. Code § 15610.30(b), (c); *Hasbun & O'Connor*, No. B299648, 2021 WL 972875, at *5 (Cal. App. 3d Dist. Mar. 16, 2021).

[40] We agree and therefore, need not reach Roger's *mens rea* argument.

[41] On appeal, however, Rogers presents another theory—she was "held hostage by WTC *when WTC placed the bulk* of the Trust assets in the WPF investments which did not permit free transfer of the assets should Rogers select a successor trustee." Appellants' Br. 50 (emphasis added).  In other words, the investment into the Private Funds is the crux of Roger's elder abuse claim, and any such claim was abandoned by counsel during opening arguments.

[42] Fed. R. Civ. P. 15(a)(2).

prejudice to the opposing party, or futility.[43]  A party seeking to amend a scheduling order must additionally show "good cause."[44]  A party thus must show that "good cause" to modify the scheduling order exists "before a district court considers whether the party also meets Rule 15(a)'s more liberal standard."[45]  The touchstone for assessing whether there was good cause to amend a complaint is whether the moving party showed due diligence in bringing their claims.[46]

Appellants argue the amendment was untimely because Wilmington Trust threatened to bring a claim for sanctions against Appellants' counsel several years prior. In response, Wilmington Trust asserted it had good cause to amend shortly before trial, after discovering key information relevant to its attorney's fees claim.  Wilmington Trust supported its motion with extensive reference to the record, explaining how it had only recently learned certain facts Plaintiffs alleged in the Amended Complaint and the Interrogatories were not supported by evidence.  Based on this record, the District Court did not abuse its discretion in finding Wilmington Trust had good cause to amend.[47]

Finally, we have interpreted Rule 15 liberally to allow amendment even where the moving party has delayed in proposing the amendment, "so long as the opposing party is

---

[43] *Arthur v. Maersk, Inc.*, 434 F.39 196, 204 (3d Cir. 2006).
[44] Fed. R. Civ. P. 16(b).
[45] *Premier Comp Sols., LLC v. UPMC* 970 F.3d 316, 319 (3d Cir. 2020).
[46] *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010).
[47] *See Harris v. FedEx Nat. LTL, Inc.*, 760 F.3d 780, 786–87 (8th Cir. 2014) (affirming decision to grant motion to amend where amendment was premised on newly discovered evidence) *cf., e.g., Palmer v. Champion Mortg.*, 465 F.3d 24, 31 (1st Cir. 2006) (concluding the lack of newly discovered evidence evinced lack of good cause to amend).

14

not prejudiced by the delay."[48]  There was no undue delay here, as Wilmington Trust filed its motion within three months of the close of depositions and learning of inaccurate Interrogatories.  Moreover, Appellants stated to the District Court that it would be unable to "elicit a factual record through deposition or written discovery" because discovery had closed,[49] but the added claim for attorney's fees does not require any additional discovery or any change in litigation theory.[50]  Appellants have failed to assert or establish any specific prejudice, and therefore, we affirm the District Court's decision to grant the motion to amend.

## II.    CONCLUSION

For the foregoing reasons, we affirm the Orders of the District Court.

---

[48] *Rutter v. Rivera*, 74 F. App'x 182, 186 (3d Cir. 2003) (collecting cases); *see also Arthur*, 434 F.3d at 204 ("prejudice to the non-moving party is the touchstone for the denial of an amendment") (quoting *Lorenz v. CSX Corp*, 1 F.3d 1406, 1414 (3d Cir. 1993)).
[49] App. 193.
[50] *Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 (3d. Cir. 1969) ("Prejudice under [Rule 15] means undue difficulty in prosecuting a lawsuit as a result of change of tactics or theories").